2024-1551

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

ADNEXUS INC.,
*Plaintiff-Appellant*

v.

META PLATFORMS, INC.,
*Defendant-Appellee*

Appeal from the United States District Court for the Western District of Texas, in No. 6:23-cv-00152-JKP, Judge Jason K. Pulliam

## APPELLEE'S RESPONSE BRIEF


Tara Kurtis
PERKINS COIE LLP
110 N. Wacker Drive, Suite 3400
Chicago, Illinois 60606
(312) 324-8607
TKurtis@perkinscoie.com

Nathan K. Kelley
PERKINS COIE LLP
700 13th Street, N.W., Suite 800
Washington, D.C. 20005
(202) 654-3343
NKelley@perkinscoie.com

Dan L. Bagatell
PERKINS COIE LLP
3 Weatherby Road
Hanover, New Hampshire 03755
(602) 351-8250
DBagatell@perkinscoie.com

*Counsel for Meta Platforms, Inc.*


August 30, 2024

## CLAIM 1 OF THE ’101 PATENT

1. [1a] A method of online advertising, comprising:

[1b] providing an advertisement associated with a first party for display in a network communication delivered to a computing device of a recipient during a browsing session, wherein the advertisement contains an interactive element displayed within the advertisement, and wherein the network communication is associated with a second party different than the first party;

[1c] receiving an indication that the recipient activated the interactive element displayed within the advertisement;

[1d] determining, in response to the receiving the indication, whether an identifier containing unique identifying information about the recipient is present on the computing device;

[1e] if the identifier containing unique identifying information about the recipient is not present on the computing device:

causing a text field to be displayed in at least a portion of the advertisement;

receiving contact information inputted into the text field by the recipient;

generating a user profile associated with the recipient based on the contact information; and

causing an identifier associated with the user profile to be stored on the computing device of the recipient; and

[1f] if the identifier containing unique identifying information about the recipient is present on the computing device:

retrieving a user profile associated with the recipient from a visitor information database using at least a portion of the identifier, wherein the user profile comprises at least delivery method preferences and demographic information;

[1g] retrieving additional information associated with the advertisement based on at least a portion of the user profile associated with the recipient;

> [1h] delivering the additional information to the recipient based on the delivery method preferences, the delivering being performed without interrupting the browsing session of the recipient; and
>
> [1i] recording the activation by the recipient of the interactive element as recipient tracking data in an analytics server, the recipient tracking data being associated with the unique identifying information about the recipient.

Appx24 (limitation numbers added).

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 24-1551

**Short Case Caption** Adnexus Inc. v. Meta Platforms, Inc.

**Filing Party/Entity** Meta Platforms, Inc.

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.
2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.
3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.
4. Please do not duplicate entries within Section 5.
5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 08/30/2024

Signature: /s/Nathan K. Kelley

Name: Nathan K. Kelley

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☑ None/Not Applicable |
| Meta Platforms, Inc. | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| Alston & Bird LLP: | Brady Cox | Shawn Gannon |
| | Tyler Thomas | Yuri Mikulka |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐ Yes (file separate notice; see below) ☑ No ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS


Certificate of Interest

Table of Contents ....... i

Table of Authorities ....... iiiii

Table of Abbreviations ....... vii

Related Cases ....... viii

Introduction ....... 1

Statement of Issues ....... 2

Statement of the Case ....... 4

I. The ’101 patent addresses online advertising based on user-provided information and preferences ....... 4

A. The specification describes an advertising method in which a recipient provides both contact information and delivery method preferences ....... 4

B. The claims require determining whether an identifier is present on a recipient’s computer, and if so, retrieving a user profile with delivery method preferences from a database, otherwise, generating a user profile ....... 7

C. During prosecution, the applicant added claim 1’s conditional method steps, and then relied on those steps to obtain a patent ....... 9

II. Adnexus accused Meta Lead Ads of infringing the ’101 patent based on allegedly prefilling forms with user contact information ....... 10

III. The district court dismissed Adnexus’s complaint because it failed to plausibly plead infringement of the delivery method preferences limitation 1f ....... 11

A. The district court's standing order provides for dismissal with prejudice only after the parties confer and the plaintiff is given the opportunity to amend the complaint ....... 11

B. Meta informed Adnexus that its original complaint was deficient, Adnexus filed its FAC, and Meta filed its motion to dismiss ....... 12

C. The district court dismissed Adnexus's complaint with prejudice for failing to plausibly plead infringement of limitation 1f ....... 14

Summary of Argument ....... 15

Argument ....... 18

I. Standards of Review ....... 18

II. The district court properly dismissed Adnexus's complaint because contact information is not a user's delivery method preferences ....... 19

A. Merely providing contact information does not identify a user's delivery method preferences ....... 21

B. The district court properly recognized that the claimed delivery method preferences are distinct from the contact information identified in the FAC ....... 29

III. Even if Adnexus had pleaded infringement under the doctrine of equivalents, prosecution history estoppel prevents it from relying on that doctrine ....... 36

IV. The Court can affirm on the alternative ground that Adnexus did not plausibly allege infringement of limitation 1e ....... 42

V. The district court properly dismissed Adnexus's complaint with prejudice ....... 46

Conclusion ....... 51

Certificate of Compliance with Type-Volume Limitation

# TABLE OF AUTHORITIES

**Cases** **Pages**

*Allen v. Vertafore, Inc.*,
28 F.4th 613 (5th Cir. 2022) .......... 18

*American Permahedge, Inc. v. Barcana, Inc.*,
105 F.3d 1441 (Fed. Cir. 1997) .......... 40

*Amgen Inc. v. Coherus BioSciences Inc.*,
931 F.3d 1154 (Fed. Cir. 2019) .......... 36, 41, 42

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 20, 31, 49

*Baran v. Med. Device Techs., Inc.*,
616 F.3d 1309 (Fed. Cir. 2010) .......... 35

*Batson v. Neal Spelce Assocs.*,
765 F.2d 511 (5th Cir. 1985) .......... 18, 19

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 20

*Bill of Lading Transmission & Processing Sys. Pat. Litig., In re*,
681 F.3d 1323 (Fed. Cir. 2012) .......... 30

*Canton Bio Med., Inc. v. Integrated Liner Techs., Inc.*,
216 F.3d 1367 (Fed. Cir. 2000) .......... 41

*ChargePoint, Inc. v. SemaConnect, Inc.*,
920 F.3d 759 (Fed. Cir. 2019) .......... 49, 50

*Club Retro, L.L.C. v. Hilton*,
568 F.3d 181 (5th Cir. 2009) .......... 18

*Cohesive Techs., Inc. v. Waters Corp.*,
543 F.3d 1351 (Fed. Cir. 2008) .......... 32

*Deere & Co. v. Bush Hog, LLC*,
703 F.3d 1349 (Fed. Cir. 2012) .......... 21, 22

*Disc Disease Sols. Inc. v. VGH Sols., Inc.*,
888 F.3d 1256 (Fed. Cir. 2018) ....................................................................20

*Elkay Mfg. Co. v. Ebco Mfg. Co.*,
192 F.3d 973 (Fed. Cir. 1999) ......................................................................41

*Energy Transp. Grp., Inc. v. William Demant Holding A/S*,
697 F.3d 1342 (Fed. Cir. 2012) ....................................................................41

*F.D.I.C. v. Conner*,
20 F.3d 1376 (5th Cir. 1994) ...................................................................18, 19

*Ferrer v. Chevron Corp.*,
484 F.3d 776 (5th Cir. 2007) ........................................................................31

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
535 U.S. 722 (2002).......................................................................................41

*Finch v. Hughes Aircraft Co.*,
926 F.2d 1574 (Fed. Cir. 1991) ...............................................................24, 29

*Fresenius USA, Inc. v. Baxter Int'l, Inc.*,
582 F.3d 1288 (Fed. Cir. 2009) ....................................................................47

*Google Tech. Holdings LLC, In re*,
980 F.3d 858 (Fed. Cir. 2020) ................................................................24, 32

*Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*,
313 F.3d 305 (5th Cir. 2002) ........................................................................11

*Hawk Tech. Sys., LLC v. Castle Retail, LLC*,
60 F.4th 1349 (Fed. Cir. 2023) .....................................................................18

*Herrmann Holdings Ltd. v. Lucent Techs. Inc.*,
302 F.3d 552 (5th Cir. 2002) ........................................................................12

*Honeywell Int'l, Inc. v. Hamilton Sundstrand Corp.*,
523 F.3d 1304 (Fed. Cir. 2008) ....................................................................36

*Hytera Commc'ns Co. v. Motorola Sols., Inc.*,
841 F. App'x 210 (Fed. Cir. 2021) ...............................................................43

*Keranos, LLC v. Silicon Storage Tech., Inc.*,
797 F.3d 1025 (Fed. Cir. 2015) ....................................................................48

*King Pharms., Inc. v. Eon Labs, Inc.*,
616 F.3d 1267 (Fed. Cir. 2010) ....................................................................42

*Lincoln Nat'l Life Ins. Co. v. Transamerica Life Ins. Co.*,
609 F.3d 1364 (Fed. Cir. 2010) ....................................................................43

*Lyda v. CBS Corp.*,
838 F.3d 1331 (Fed. Cir. 2016) ..............................................................48, 49

*McZeal v. Sprint Nextel Corp.*
501 F.3d 1354 (Fed. Cir. 2007) ....................................................................32

*MEHL/Biophile Int'l Corp. v. Milgraum*,
192 F.3d 1362 (Fed. Cir. 1999) ....................................................................42

*Nalco Co. v. Chem-Mod, LLC*,
883 F.3d 1337 (Fed. Cir. 2018) ..............................................................37, 38

*Pall Corp. v. Hemasure Inc.*,
181 F.3d 1305 (Fed. Cir. 1999) ....................................................................41

*Pioneer Magnetics, Inc. v. Micro Linear Corp.*,
330 F.3d 1352 (Fed. Cir. 2003) ....................................................................36

*PODS, Inc. v. Porta Stor, Inc.*,
484 F.3d 1359 (Fed. Cir. 2007) ....................................................................40

*Polara Eng'g Inc v. Campbell Co.*,
894 F.3d 1339 (Fed. Cir. 2018) ....................................................................29

*Regents of Univ. of Cal. v. Dakocytomation Cal., Inc.*,
517 F.3d 1364 (Fed. Cir. 2008) ....................................................................41

*Sage Prods., Inc. v. Devon Indus., Inc.*,
126 F.3d 1420 (Fed. Cir. 1997) ..............................................................32, 47

*Simio, LLC v. FlexSim Software Prods., Inc.*,
983 F.3d 1353 (Fed. Cir. 2020) ..............................................................20, 30

*Singleton v. Wulff*,
428 U.S. 106 (1976)....24

*SmithKline Beecham Corp. v. Apotex Corp.*,
439 F.3d 1312 (Fed. Cir. 2006) ....47

*SRI Int'l v. Matsushita Elec. Corp. of Am.*,
775 F.2d 1107 (Fed. Cir. 1985) (en banc) ....31

*Sullivan v. Leor Energy, LLC*,
600 F.3d 542 (5th Cir. 2010) ....19

*Sw. Bell Tel., LP v. City of Houston*,
529 F.3d 257 (5th Cir. 2008) ....31

*Taxotere (Docetaxel) Prods. Liab. Litig., In re*,
966 F.3d 351 (5th Cir. 2020) ....18, 19

*U.S. ex rel. Doe v. Dow Chem. Co.*,
343 F.3d 325 (5th Cir. 2003) ....18

*U.S. ex rel. Willard v. Humana Health Plan of Tex. Inc.*,
336 F.3d 375 (5th Cir. 2003) ....47, 50

*Vytacera Bio, LLC v. Cytomx Therapeutics, Inc.*,
No. 20-333, 2023 WL 7125196 (D. Del. 2023) ....37

*Weyerhaeuser Co. v. Burlington Ins. Co.*,
74 F.4th 275 (5th Cir. 2023) ....19

**Rules** **Pages**

Fed. R. Civ. P. 8 ....31, 49

Fed. R. Civ. P. 12(b)(6)....11, 14, 29, 31, 49

## TABLE OF ABBREVIATIONS

| | |
|---|---|
| Adnexus | appellant Adnexus Inc. |
| Appx#### | joint appendix page #### |
| BB## | appellant Adnexus Inc.'s opening brief at page ## |
| FAC | First Amended Complaint |
| Meta | appellee Meta Platforms, Inc. |
| '101 patent | U.S. Patent No. 8,719,101 |
| (*xx*:*yy*-*zz*) | column *xx*, lines *yy*-*zz* |

## RELATED CASES

No other appeals relating to this case have been before this Court or any other appellate court. Counsel for Meta is not currently aware of any other cases that may directly affect or be directly affected by this case.

## INTRODUCTION

Adnexus failed to plausibly plead that Meta Lead Ads includes the delivery method preferences required by limitation 1f. Meta warned Adnexus about that failure and Adnexus amended its complaint, but the amended complaint was equally insufficient. Adnexus alleged that Meta Lead Ads provides certain *contact information* requested by *an advertiser*, but the complaint nowhere alleged that Meta Lead Ads also supplies *a user's delivery method preferences* for receiving additional information about an advertisement.

The district court correctly dismissed the amended complaint. Mere contact information cannot plausibly double as the claimed delivery method preferences, especially when Adnexus's patent describes and claims them distinctly. Indeed, even in this Court Adnexus treats them distinctly by arguing that delivery method preferences can be *discerned from* contact information. Adnexus is not entitled to the implausible inference that by merely providing an email address for use with a Facebook profile, a user necessarily prefers to be contacted by advertisers at that address. And Adnexus cannot drum up a new claim-construction dispute when the district court did not construe any claim terms. Neither party proposed a construction of delivery method preferences, and certainly not one that could save Adnexus's complaint. Even if the Court considers Adnexus's new arguments, its citations to the

claim language and specification only highlight the distinction between contact information and delivery method preferences.

Despite not pleading infringement under the doctrine of equivalents with any specificity, Adnexus attacks the district court's determination that prosecution history estoppel bars Adnexus from alternatively relying on the doctrine of equivalents. While the district court's conclusion was unnecessary to the judgment, it was sound because the applicant relied on the purported novelty of the limitation requiring delivery method preferences to overcome a prior-art rejection.

If this Court finds reversible error in the district court's dismissal, it should nonetheless affirm on the alternative ground that Adnexus failed to sufficiently plead generation of a user profile after determining that no identifier exists on the user's computer, as required by limitation 1e. Adnexus's allegations were limited to situations where an identifier *already existed*.

Finally, the district court did not abuse its discretion in dismissing Adnexus's amended complaint without giving Adnexus yet another opportunity to amend its complaint. The court properly exercised its right to manage its docket and stuck to the procedures in its standing order, which Adnexus followed without objection.

## Statement of Issues

1. Did the district court properly dismiss Adnexus's first amended complaint (FAC), which alleged that mere contact information met the delivery method

preferences of limitation 1f, when contact information is separately recited in the claims and cannot plausibly be understood as delivery method preferences?

2. To the extent that the district court needed to consider allegations of infringement under the doctrine of equivalents, did the court correctly apply prosecution history estoppel to bar reliance on the doctrine of equivalents where the applicant relied on the novelty of the delivery method preferences limitation to overcome an obviousness rejection?

3. If this Court concludes the district court erred as to limitation 1f, should the dismissal be affirmed on the alternative ground that Adnexus failed to sufficiently plead limitation 1e, which requires generating a user profile in the absence of an identifier, when Adnexus alleged generating a user profile only when an identifier is already present?

4. Did the district court properly exercise its discretion to dismiss Adnexus's complaint with prejudice when: (a) the district court's standing order compelled that result; (b) Adnexus followed that standing order by filing its FAC after Meta disputed the sufficiency of Adnexus's original complaint; and (c) Adnexus neither objected to the standing order nor sought further leave to amend its complaint?

## STATEMENT OF THE CASE

This is an appeal from the district court's order granting Meta's motion to dismiss Adnexus's FAC for failure to state a claim of infringement of the '101 patent.

### I. The '101 patent addresses online advertising based on user-provided information and preferences

#### A. The specification describes an advertising method in which a recipient provides both contact information and delivery method preferences

The '101 patent, Appx14-24, describes a method of online advertising using interactive ads. The ads are typical "banner" ads, but they are interactive in the sense that they allow a recipient to request additional information about the advertised product or service. Appx20(2:58-60). Figure 2 (below) shows an exemplary embodiment of a "browser interface 150 for interaction with banner advertisements 154 and 166." Appx21(3:31-33).




Fig. 2

Appx16 (color added). When a recipient interacts with banner ads, e.g., boxes 154 (green) and 166 (blue) in Figure 2, they may be presented with different options for further interaction or information. The banner ad may allow the recipient to "request additional information be delivered to the recipient by the advertiser." Appx21(3:50-

51). For example, referring to the green banner ad shown above, recipients can specify preferences about the types of additional information they would like to receive, including information about "news," "sales," or other "offers." Appx21(4:27-35). Such an ad may include an interface (denoted by a logo, 156) through which the recipient can provide contact information. Appx21(3:60-66). In another embodiment corresponding to the blue banner ad above, a recipient may be given the different option of selecting preferences for delivery of additional information, such as by email, text message, browser, or instant messaging service. Appx21(4:44-48).

The ad presentation and communication depends on whether the recipient has previously interacted with the advertising system. Recipients who have previously interacted with the advertising system will already have an identifier, e.g., a cookie, on their device through which the system can access previously saved information and preferences stored in a visitor information database. Appx21(4:19-35). An unrecognized recipient may be presented with an interface to enter their information directly. Appx21(4:59-62). If the recipient is recognized, the banner ad can be loaded with the recipient's preferences from the visitor information database. Appx21(4:57-59). The information database includes "preferences *and* contact information." Appx22(5:38-39) (emphasis added). Beyond an email address, contact information may also include a phone number or instant messaging screen name. Appx22(5:40-41).

When recipients with an identifier on their computers interact with a banner ad, they may be given the option to select the frequency of delivery of additional information and the type of additional information to receive, e.g., "newsletter," "sales," and/or "special offers." Appx21(4:25-35). Additionally, for a new recipient, "after completing the registration process and placing the cookie, the recipient may mouse over the banner advertisement 166 and select a delivery preference 170 to have the additional information delivered via text message, browser, or instant messaging service." Appx21(4:44-48). This in-banner prompting allows the user to interact with the ad without leaving the host's platform. Appx21(4:39-43).

### B. The claims require determining whether an identifier is present on a recipient's computer, and if so, retrieving a user profile with delivery method preferences from a database, otherwise, generating a user profile

Claim 1, the only claim specifically addressed in Adnexus's FAC, recites a "method of online advertising" with steps for generating and storing a user profile if one does not already exist and steps for acting on user preferences if such a user profile does exist:

> [1a] A method of online advertising, comprising:
>
> [1b] providing an advertisement associated with a first party for display in a network communication delivered to a computing device of a recipient during a browsing session, wherein the advertisement contains an interactive element displayed within the advertisement, and wherein the network communication is associated with a second party different than the first party;

[1c] receiving an indication that the recipient activated the interactive element displayed within the advertisement;

[1d] determining, in response to the receiving the indication, whether an identifier containing unique identifying information about the recipient is present on the computing device;

[1e] *if the identifier containing unique identifying information about the recipient is not present on the computing device*:

causing a text field to be displayed in at least a portion of the advertisement;

receiving contact information inputted into the text field by the recipient;

*generating a user profile* associated with the recipient based on the contact information; and

causing an identifier associated with the user profile to be stored on the computing device of the recipient; and

[1f] if the identifier containing unique identifying information about the recipient is present on the computing device:

retrieving a user profile associated with the recipient from a visitor information database using at least a portion of the identifier, *wherein the user profile comprises at least delivery method preferences* and demographic information;

[1g] retrieving additional information associated with the advertisement based on at least a portion of the user profile associated with the recipient;

[1h] delivering the additional information to the recipient based on the delivery method preferences, the delivering being performed without interrupting the browsing session of the recipient; and

[1i] recording the activation by the recipient of the interactive element as recipient tracking data in an analytics server, the recipient tracking data being associated with the unique identifying information about the recipient.

Appx24 (limitation numbers and emphases added).

Most important for this appeal, when a user identifier exists, the claim requires retrieval of a user profile that includes "at least delivery method preferences." When a user identifier does not exist, the claim requires collecting contact information and generating a user profile based on the collected information.

### C. During prosecution, the applicant added claim 1's conditional method steps, and then relied on those steps to obtain a patent

The application that ultimately issued as the '101 patent did not initially claim retrieving a user profile with delivery method preferences when a user identifier is present nor did it claim generating a user profile in the absence of a user identifier. *See* Appx186-89. Those conditional claim limitations were added as part of new claim 18 in response to a rejection; claim 18 eventually issued as claim 1 without further amendment. Appx244; *see* Appx24.

After claim 18 was added, it was rejected over prior art. The applicant traversed the rejection, arguing that the prior art did not "disclose 'determining, in response to the receiving the indication, whether an identifier containing unique identifying information about the recipient is present on the computing device,' and subsequently performing alternate method steps based on the determination, as recited in claim 18." Appx359. The applicant thus relied on the new conditional method steps of claim 18 and the fact that they occurred after determining whether a user identifier existed on the computing device. That argument convinced the examiner to issue the claims, with new claim 18 issuing as claim 1. Appx378.

## II. Adnexus accused Meta Lead Ads of infringing the ’101 patent based on allegedly prefilling forms with user contact information

Adnexus identifies “Meta Lead Ads” as the “[a]ccused [i]nstrumentalities.” Appx75. According to Adnexus, Meta Lead Ads “can check for user identification information in the cookies” on a user’s device and can “pull information from the person’s profile to complete prefilled fields on [a] form.” Appx99. As contents of the “prefilled fields,” Adnexus identifies a graphic allegedly from a Meta website showing “Contact fields” (e.g., email address, phone number, street address), “User information” (e.g., first and last names), “Demographic questions” (e.g., date of birth, gender, marital status), and “Work information” (e.g., job title, work phone number, company name). Appx102. Adnexus describes the prefilled fields as including “contact information, *delivery method preferences*, and demographic information.” Appx101 (emphasis added).

During briefing before the district court, Adnexus argued that “[b]y pre-filling forms based on a user’s Phone number, Email, Instagram handle, WhatsApp handle, or etc., Meta Lead Ads are providing information *that demonstrates* the delivery method preferences.” Appx403-04 (emphasis added). And before this Court, Adnexus asserts that because a user can choose which contact information fields to populate, “preferences of the user on how they prefer to receive information *can be discerned*.” BB20-21 (emphasis added).

## III. The district court dismissed Adnexus's complaint because it failed to plausibly plead infringement of the delivery method preferences limitation 1f

### A. The district court's standing order provides for dismissal with prejudice only after the parties confer and the plaintiff is given the opportunity to amend the complaint

To "advance the case efficiently and minimize the cost of litigation," Appx62, the district court maintains a standing order that streamlines motion-to-dismiss procedures. Appx62-66. Before filing any motion to dismiss under Rule 12(b)(6), the defendant must "confer with opposing counsel concerning the proposed deficiencies and the expected basis of the Motion." Appx62. That conferral must include "written (email or certified mail) notification … specifying the proposed deficiencies" of the complaint. Appx62.

Following the conferral, the plaintiff may file an amended complaint. Appx62. If the defendant thinks the complaint is still deficient, the defendant may then file its motion to dismiss under Rule 12(b)(6). Appx62. Because the plaintiff has already had an opportunity to correct the defect, the standing order warns that no further opportunity to amend the complaint will be provided:

> Under this practice, the Plaintiff has already been provided notice of the proposed deficiencies and the opportunity to amend the pleading prior to the filing of a Motion to Dismiss. Consequently, if the Court finds any Motion to Dismiss has merit, **the Plaintiff shall not be allowed an additional opportunity to amend its Complaint following a properly filed Motion to Dismiss.** *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.,* 313 F.3d

> 305, 329 (5th Cir. 2002); *Herrmann Holdings Ltd. v. Lucent Techs. Inc.,* 302 F.3d 552, 567 (5th Cir. 2002).

Appx62-63 (emphasis original).

### B. Meta informed Adnexus that its original complaint was deficient, Adnexus filed its FAC, and Meta filed its motion to dismiss

Adnexus's original complaint failed to allege that the accused Meta Lead Ads product met several limitations, including limitations 1e (generating a user profile after determining a lack of user identifier) and 1f (the delivery method preferences limitation). *See* Appx29-35; Appx42-45. For limitation 1e, the complaint alleged that Meta Lead Ads generated a user profile only when an identifier *already existed*, namely, that "Meta Lead Ads can prompt the target user to enter missing information that could not be *pulled from their profile*." Appx43 (emphasis added). For limitation 1f, the complaint alleged that Meta Lead Ads included "prefilled fields [that] can include contact information and demographic information," but that discussion did not mention delivery method preferences. Appx44. Adnexus also recited boilerplate language alleging infringement "literally and/or under the doctrine of equivalents" without further specifying its allegations of infringement under the doctrine of equivalents. Appx33.

Consistent with the district court's standing order, Meta wrote to Adnexus detailing those and other deficiencies in the complaint. Appx161-66. For limitation 1e, Meta explained that Adnexus's complaint "only alleges that pre-existing profiles

could be supplemented with additional information," and that it never alleged "that the Accused Products actually generate a new user profile when the alleged identifier is not present." Appx164. Similarly, for limitation 1f, Meta noted that Adnexus's complaint pointed to "the alleged existence of contact fields such as email address and phone number, but does not allege that this profile includes a delivery method *preference*." Appx165. The parties then conferred and Adnexus confirmed its understanding of Meta's arguments. Appx159(¶5). As permitted by the standing order, Adnexus then amended its complaint, presumably in light of Meta's arguments.

Adnexus's FAC did not change much. *See* Appx168-72 (comparison of Adnexus's original and amended claim chart). It continued to describe its Exhibit B claim chart as showing "how the elements of an exemplary claim 1 from the '101 Patent are infringed by the Accused Products." Appx78. For limitation 1e, Adnexus added a statement that user-inputted information can "act[] as user profile information," but it continued to allege that "Meta Lead Ads can prompt the target user to enter missing information that could not be *pulled from their profile*," i.e., when an identifier already existed. Appx99-100 (emphasis added); Appx170. For limitation 1f, Adnexus added "delivery method preferences" to its list of what the prefilled fields may include, and it also referred to the alleged option of adding "custom questions" to "uncover [user's] preferences." Appx101-02; Appx170.

Adnexus also added new allegations of indirect and willful infringement along

with new Exhibits C through F, which Adnexus relied on only for its willfulness allegations. Appx76-78. Adnexus alleged that Exhibit C, an email from Adnexus's CEO and President to four of Meta's Officers, demonstrated Meta's pre-suit knowledge "that its activities concerning the Accused Products infringed one or more claims of the '101 patent." Appx77. Exhibit D, an attachment to the Exhibit C email, purportedly provided "a preliminary infringement analysis" that "made [Meta] aware that the '101 patented methodology is practiced by the Lead Ads program." Appx77. Exhibits E and F were two additional correspondences from Adnexus to Meta, again purportedly demonstrating Meta's pre-suit knowledge of infringement. Appx77-78. Adnexus did not rely on Exhibits C through F for any purpose other than alleging Meta's pre-suit knowledge.

Because of the continuing deficiencies in Adnexus's FAC, Meta filed a motion to dismiss the complaint for failure to state a claim, pursuant to Rule 12(b)(6) and the standing order. Appx134, Appx147-49 (discussing limitation 1e), Appx149-51 (discussing limitation 1f). Meta's motion cited the same deficiencies it had already raised with Adnexus in response to the original complaint. Appx163-65.

### C. The district court dismissed Adnexus's complaint with prejudice for failing to plausibly plead infringement of limitation 1f

The district court agreed with Meta that Adnexus's allegations of infringement for limitation 1f were deficient, concluding that Adnexus's complaint "makes no allegation that Meta Lead Ads retrieves any user profile that includes any delivery

method preferences." Appx8. In particular, the district court found that "contact information [is] sufficiently distinct from delivery method preferences." Appx9. Adnexus's contact-information allegations, therefore, were "insufficient to state a plausible claim for direct infringement." Appx9.

The district court additionally explained that Adnexus could not have relied on the doctrine of equivalents to allege that contact information infringed the delivery method preferences limitation. Appx7. The court reasoned that because the '101 patent issued based on the conditional method steps including the retrieval of delivery method preferences, prosecution history estoppel prevented Adnexus from "equat[ing] pre-filled forms based on specific contact information" with "a user's delivery method preference." Appx9. Because the complaint did not sufficiently plead direct infringement, the court held that Adnexus's allegations of indirect and willful infringement also failed. Appx9-10. In accordance with its standing order, the court dismissed Adnexus's complaint with prejudice. Appx10-11.

Meta had also argued that Adnexus failed to plausibly plead infringement of limitation 1e, "generating a user profile" if there is no user identifier on the user's device. The district court did not reach that argument because it found Adnexus's complaint insufficient as to the delivery method preferences limitation. Appx8.

## SUMMARY OF ARGUMENT

The Court should affirm dismissal of the FAC. Adnexus alleged infringement

of limitation 1f's delivery method preferences based only on a user providing contact information with their profile. But mere contact information does not identify delivery method preferences. The '101 patent expressly distinguishes contact information from delivery method preferences. Even Adnexus recognizes the difference: in this Court, it has not argued that contact information is the same as delivery method preferences, but merely that the former can be used to *discern* the latter.

Because Exhibit B to the FAC recites only contact information as meeting limitation 1f, those allegations are insufficient to plausibly state a claim for infringement. And, because Adnexus never relied on Exhibit D to allege direct infringement before the district court, this Court should not newly consider that exhibit on appeal. In any event, Exhibit D similarly relies only on contact information, so it adds nothing to Adnexus's allegations or arguments.

Adnexus mischaracterizes the district court's order as relying on an overly narrow construction of "delivery method preferences." But the court expressly stated it was not performing a claim construction; it simply, and correctly, observed that the contact information that Meta Lead Ads can prefill in an advertiser's form is plainly not delivery method preferences. Indeed, the two are recited separately in claim 1. Adnexus's manufactured claim-construction dispute is also entirely new; it never raised such arguments before the district court. In any event, the '101 patent clearly distinguishes between contact information and delivery method preferences,

so Adnexus's new arguments fail on the merits.

Adnexus's challenges to the district court's discussion of the doctrine of equivalents are also off-base. Because Adnexus never specifically pleaded infringement under the doctrine of equivalents, the district court did not need to analyze those non-existent allegations. Nevertheless, the district court correctly recognized that prosecution history estoppel barred Adnexus from alleging infringement of the delivery method preferences limitation by equivalents.

If the Court finds reversible error in the district court's dismissal order, it can and should affirm on the alternative ground that Adnexus failed to plausibly allege infringement of limitation 1e. That limitation requires generating a user profile after determining that a user identifier does not exist on the computing device. Adnexus's allegations for limitation 1e rested entirely on the system pulling information associated with an *existing* identifier and filling in missing information. Adnexus did not plausibly allege infringement of limitation 1e, which requires generating a user profile in the *absence* of a user identifier.

Adnexus finally argues that it should be given another chance to amend its complaint. But Adnexus willingly participated in the procedure set forth in the district court's standing order without objection. It gained the benefit of Meta's detailed deficiency arguments and amended its complaint after hearing those arguments. Adnexus knew that under the standing order the district court would dismiss its

complaint with prejudice if the court found merit to Meta's motion. Moreover, Adnexus never asked the district court for another opportunity to amend its complaint; it cannot do so for the first time on appeal.

## ARGUMENT

### I. Standards of Review

This Court reviews the district court's grant of a motion to dismiss under the standard applied by the regional circuit. *Hawk Tech. Sys., LLC v. Castle Retail, LLC*, 60 F.4th 1349, 1356 (Fed. Cir. 2023). The Fifth Circuit reviews the grant of a motion to dismiss for failure to state a claim de novo. *Allen v. Vertafore, Inc.*, 28 F.4th 613, 615 (5th Cir. 2022). The Fifth Circuit reviews the district court's decision to dismiss a complaint either with or without prejudice "only for abuse of discretion." *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 215 (5th Cir. 2009). The Fifth Circuit similarly reviews denial of leave to amend a complaint for abuse of discretion. *U.S. ex rel. Doe v. Dow Chem. Co.*, 343 F.3d 325, 329 (5th Cir. 2003).

In its Standards of Review section, Adnexus misleadingly asserts that the Fifth Circuit considers dismissal with prejudice a "draconian remedy" "of last resort." BB15 (citing *F.D.I.C. v. Conner*, 20 F.3d 1376, 1380 (5th Cir. 1994); *Batson v. Neal Spelce Assocs.*, 765 F.2d 511, 515 (5th Cir. 1985); *In re Taxotere (Docetaxel) Prods. Liab. Litig.*, 966 F.3d 351, 357 (5th Cir. 2020)). Adnexus misconstrues the precedent it cites. The Fifth Circuit considers dismissal with prejudice a "draconian remedy"

*only when used as a sanction*. *See F.D.I.C.*, 20 F.3d at 1380 (discussing "several factors that must be present before a district court may dismiss a case as a sanction for violating a discovery order"); *Batson*, 765 F.2d at 515 (considering "whether the district court abused its discretion in choosing the sanction of dismissal with prejudice"); *Taxotere*, 966 F.2d at 515 (explaining, in the context of a sanctions dispute, that the district court's discretion in dismissing cases with prejudice is limited "[b]ecause of the severity of such a sanction").

Fifth Circuit law makes clear that dismissal with prejudice is appropriate when the plaintiff had an opportunity to amend its complaint but still failed to state a plausible claim for relief. *See Weyerhaeuser Co. v. Burlington Ins. Co.*, 74 F.4th 275, 289-90 (5th Cir. 2023); *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 551 (5th Cir. 2010). The district court's unchallenged standing order provided such an opportunity, and Adnexus filed an FAC in an attempt to correct the deficiencies that Meta raised in its conferral letter and later raised in its motion to dismiss.

## II. The district court properly dismissed Adnexus's complaint because contact information is not a user's delivery method preferences

Adnexus's complaint alleged that Meta Lead Ads infringes the delivery method preferences limitation 1f with prefilled fields that include both "contact information" *and* "delivery method preferences." Appx101-02. But the cited documentation does not address delivery method preferences. The FAC pointed to only contact information for this aspect of limitation 1f, Appx102, and contact

information plainly is *not* delivery method preferences. Adnexus therefore did not plausibly plead infringement of limitation 1f, and dismissal of its complaint was warranted.

To survive a motion to dismiss for failure to state a claim, the complaint must state a claim "that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Adnexus posits that a complaint "need only give the defendant 'fair notice' of the infringement claim and 'the grounds upon which it rests.'" BB9-10 (citing *Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256, 1260 (Fed. Cir. 2018); BB17 (citing same); BB22 (citing same). But the plaintiff must also plead facts that, when taken as true, "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," based on "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. To sufficiently plead a claim for patent infringement, it is not enough to provide mere conclusory allegations that an accused product practices the claimed elements. *See Iqbal*, 556 U.S. at 678–79; *Simio, LLC v. FlexSim Software Prods., Inc.*, 983 F.3d 1353, 1365 (Fed. Cir. 2020). As Adnexus concedes, a complaint must "plausibly allege that the accused products meet 'each and every element of at least one claim' of the asserted patent." BB10 (quoting *Disc Disease*, 888 F.3d at 1260).

### A. Merely providing contact information does not identify a user's delivery method preferences

As the district court recognized, a user's contact information does not identify the user's delivery method preferences. Appx8-9. Contact information simply indicates how a user *may* be contacted, not a *preferred delivery method*. Claim 1 itself uses "contact information" and "delivery method preferences" as distinct terms. Limitation 1e, for example, requires "receiving contact information" and "generating a user profile … based on the contact information," whereas limitation 1f recites "retrieving a user profile … compris[ing] at least delivery method preferences." Appx24(9:2-47); *see, e.g.*, *Deere & Co. v. Bush Hog, LLC,* 703 F.3d 1349, 1354 (Fed. Cir. 2012) (claim recited both "secured to" and "into engagement with," so "[t]o give effect to all terms of the claim, 'secured to' and 'into engagement with' must have distinct meanings").

The specification also distinguishes between contact information and delivery method preferences. For example, it explains that when a user has an identifier on a device, the user would have "previously registered their email address through the online registration mechanism." Appx21(4:36-39). Only "after completing the registration process" can the user "select a delivery preference 170 to have the additional information delivered via text message, browser, or instant messaging service." Appx21(4:44-48). That is, *after* a user provides an email address, the user may *separately* choose their delivery preferences. The delivery preferences may include

means other than email, i.e., “text message, browser, or instant messaging service.” *Id.* The specification further explains that if the user does not have an associated identifier, they can be presented a “text field 158” into which they “may type … contact information, such as an email address,” “*or* presented a delivery method preference selection 170.” Appx21(4:11-12, 4:59-62); Appx16(Fig. 2); *see also* Appx21(3:64-4:3). Moreover, the patent describes the visitor information database as including both “preferences *and* contact information.” Appx22(5:38-39) (emphasis added). Because the patent clearly distinguishes between the two concepts, mere provision of contact information cannot satisfy the delivery method preferences limitation.

Even the FAC treated contact information distinctly from delivery method preferences. The FAC asserted that prefilled fields in Meta Lead Ads “can include contact information, delivery method preferences, and demographic information.” Appx101. By listing them separately in its allegation, Adnexus recognized that contact information and delivery method preferences are different. Nevertheless, despite that recognition, Adnexus relied on only contact information as meeting limitation 1f’s “delivery method preferences” requirement.

In view of the patent’s teachings and Adnexus’s own allegations, the district court correctly recognized that Adnexus “makes no allegation that Meta Lead Ads retrieves any user profile that includes any delivery method preferences.” Appx8.

The court properly rejected Adnexus's attempt to "equate[] pre-filled forms based on specific contact information … [with] the user's delivery method preference" and concluded that "contact information [is] sufficiently distinct from delivery method preferences to find that Plaintiffs' allegations [are] insufficient to state a plausible claim for direct infringement." Appx9.

Adnexus's opening brief attempts to align its contact-information allegations with limitation 1f's delivery method preferences requirement by repeatedly citing portions of Exhibits B and D attached to the FAC. Those arguments fail; to the extent Adnexus even raised its appeal arguments in the district court, neither exhibit shows more than user contact information and neither explains why such contact information constitutes delivery method preferences.

Adnexus falsely accuses the district court of "disregard[ing]" the allegations in the FAC's Exhibits B and D. BB8, BB25. The court's order expressly considered both Exhibit B and Adnexus's related opposition arguments. Appx2 (describing Exhibit B (ECF No. 16-2) and Adnexus's related arguments), Appx8-9 (citing to both Exhibit B and the parties' arguments about that exhibit). Adnexus's disagreement with the court's conclusion that "contact information [is] sufficiently distinct from delivery method preferences to find … Plaintiffs' allegations insufficient …" does not mean Exhibit B was ignored. Appx9. The order did not address Exhibit D because Adnexus never presented it as support for its direct-infringement allegations.

Adnexus can hardly fault the district court for overlooking an exhibit that Adnexus failed to cite. Adnexus forfeited any arguments based on Exhibit D. *See, e.g.*, *Singleton v. Wulff*, 428 U.S. 106, 120-21 (1976) (noting generally that "a federal appellate court does not consider an issue not passed upon below"); *In re Google Tech. Holdings LLC*, 980 F.3d 858, 863–64 (Fed. Cir. 2020) (holding that Google forfeited claim construction arguments it had not raised to the Board); *Finch v. Hughes Aircraft Co.*, 926 F.2d 1574, 1576–77 (Fed. Cir. 1991) (affirming dismissal of complaint where plaintiff failed to contest dismissal in the trial court: "by failing to oppose Hughes' motion to dismiss, Finch has forfeited his right to contest the dismissal on any ground he could have raised below").

Comparing Adnexus's use of Exhibits B and D confirms its forfeiture of the Exhibit D arguments now made on appeal. In the FAC, Adnexus described Exhibit B as explaining "how the elements of exemplary claim 1 … are infringed." Appx78. By contrast, it included Exhibit D only to support allegations of Meta's purported pre-suit knowledge of infringement for purposes of willful infringement. Appx77. Adnexus described Exhibit D as merely a "preliminary infringement analysis" that allegedly "made [Meta] aware that the '101 patented methodology is practiced by the Lead Ads program." Appx77. It never relied on Exhibit D as support for direct infringement.

Adnexus's opposition to Meta's motion to dismiss used Exhibits B and D in

the same contrasting way. Adnexus's opposition referred to Exhibit B as showing its "infringement allegations on an element-by-element basis," but it relied on Exhibit D only as alleged evidence of Meta's pre-suit knowledge to support willful infringement allegations and arguments. Appx395; Appx406-07; *see also* Appx399-400. Adnexus did not rely on Exhibit D to argue direct infringement until its appeal brief, which is too late.

Even if this Court concludes that the district court somehow erred in its consideration of Exhibits B or D, any error was harmless. Those exhibits allege infringement of the delivery method preferences limitation solely by pointing to contact information. That is plainly insufficient.

***Exhibit B***

In Exhibit B, Adnexus alleges that Meta Lead Ads's use of "cookies" to pull stored user information meets the delivery method preferences limitation. BB20 (citing Appx101-02). But none of the various categories of stored user information is a delivery method preference:

| Contact fields | User information | Demographic questions | Work information |
|---|---|---|---|
| • Email address<br>• Phone number<br>• Street address<br>• City<br>• County/region<br>• County<br>• Country<br>• Postcode<br>• Postcode | • Full name<br>• First name<br>• Last name | • Date of birth<br>• Gender<br>• Marital status<br>• Relationship status<br>• Military status | • Job title<br>• Work phone number<br>• Work email address<br>• Company name |

Appx102. Adnexus tacitly recognizes that contact information is not delivery method preferences because it never argues that point directly; rather, it argues—without support—that the available user information may "be *usable to discern* the user's preference for how additional information may be delivered." BB20-21 (emphasis added). But limitation 1f does not recite retrieving information *usable to discern* a user's delivery method preferences; it requires retrieval of the delivery method preferences themselves.

Adnexus further argues that by "choosing which specific email address, phone number, or physical address to include with their profile, a user is … indicating a preference on how to be contacted." BB21. Not so. Providing contact information is plainly not the same as providing a preferred delivery method for further

communications from advertisers. As Adnexus recognizes, users may have multiple email addresses (BB21), and they may provide both an email address and a phone number or other contact information. Providing multiple points of contact does not indicate which of those methods, if any, is preferred for further communication. Even the most extreme case—providing a single email address—does not indicate that user's desire for that email address to be their preferred means of communication with advertisers. For example, a user may have provided the email address as a recovery method in case they lose their Facebook profile password but would prefer to receive advertiser communications through a physical mailing address instead. The fact that the user provided one email address says nothing regarding the user's preference for physical-mail advertisements. That is so because contact information and delivery preferences serve two different purposes. For example, the advertiser may only be interested in a user's phone number. But the advertiser has no way of knowing if a phone number is the user's *preferred delivery method* because that was not the information the advertiser sought.

Adnexus also points to an advertiser's ability to customize questions asked to a user to "uncover their preferences" when using Meta Lead Ads. BB21-22 (citing Appx102). The cited passage tells an advertiser that it can "[t]ailor your questions in lead ads so you can uncover [users'] preferences, and ensure you're reaching out to the right people with the right information." Appx102. But the cited material says

nothing about determining the user's *delivery method* preferences. At most, it suggests tailoring questions to determine the *type* of advertising content the user prefers, not *where to send* that preferred content. Adnexus fails to cite even a *suggestion* to collect delivery method preferences, let alone facts showing actual collection and storage of such information. *See* Appx102. In sum, nothing in Exhibit B plausibly alleges infringement of the delivery method preferences limitation.

***Exhibit D***

Even if Adnexus's new Exhibit D arguments are considered, they do not move the needle. Adnexus first points to a marked-up screenshot of an online guide for Meta Lead Ads in which Adnexus added the notation "delivery method preferences" to a description of "prefilled fields" and user contact information. BB23 (citing Appx119-20). Nothing in the cited guide suggests that fields prefilled with previously provided contact information constitutes delivery method preferences. Adnexus's bald assertion cannot change the fact that merely providing contact information does not identify delivery method preferences.

Adnexus also cites two online resources, Source 14 and Source 17, for the same purpose. It points to the availability of pre-populated user information and the fact that a user can edit information before submitting a form. BB24 (citing Appx122-23). To begin with, the Court should not consider these arguments because Sources 14 and 17 were not cited as support for limitation 1f. Rather, Exhibit D used

those sources for a *different* claim limitation (limitation 1h). *See, e.g.*, *Finch*, 926 F.2d at 1576–77; *Polara Eng'g Inc v. Campbell Co.*, 894 F.3d 1339, 1355 (Fed. Cir. 2018). Specifically, Adnexus's Exhibit D cited Sources 14 and 17 as showing the delivery of "additional information to the recipient … without interrupting the browsing session," not to show the existence of limitation 1f's "delivery method preferences." Appx122-23. Moreover, Sources 14 and 17 merely show a user providing contact information. As explained above, provision of contact information does not identify delivery method preferences, so these "Sources" cannot cure Adnexus's deficient allegations even if this Court considers them.

### B. The district court properly recognized that the claimed delivery method preferences are distinct from the contact information identified in the FAC

Adnexus next quibbles with the district court's interpretation of "delivery method preferences" as distinct from contact information. BB25. Adnexus labels it "claim construction," but the district court expressly found that dismissal "d[id] not require claim construction." Appx9; *see also* Appx8 (noting that "claim construction does not dispense with the pleading requirements to allege sufficient facts to survive a Rule 12(b)(6) motion to dismiss"). The court did not construe the "delivery method preferences" term. It did not walk through the claim language, specification, or other evidence to arrive at a construction, as it would have done in the *Markman* context. Instead, it looked at the information plainly required by limitation 1f and found

"contact information sufficiently distinct from delivery method preferences." Appx9.

It would be absurd to prevent district courts from considering claim terms they have not formally construed when ruling on a motion to dismiss, yet that is effectively what Adnexus is suggesting. This Court regularly affirms dismissals where district courts have analyzed allegations regarding claim limitations but have not formally construed any claim terms.

For example, in *In re Bill of Lading Transmission & Processing System Patent Litigation*, 681 F.3d 1323, 1339 (Fed. Cir. 2012), the Court affirmed dismissal of the plaintiffs' contributory infringement count where the district court had not engaged in any "formal claim construction." The complaint alleged that the accused products could be used to "speed billing and driver settlement, or scan proof of delivery documents." *Id.* Neither use involved "scanning bills-of-lading which are created prior to package pick-up" or using a bill-of-lading to plan delivery routes, but the claimed method required performance of both steps. *Id.* The Court held that "formal claim construction [was] not required to reach the conclusion that … [the defendants'] products can be used for non-infringing purposes." *Id.* That result was plain from the face of the complaint. *Id.* The district court here similarly did not err by dismissing the complaint "without first construing the claims of the" asserted patent. *Id.*; *see also Simio*, 983 F.3d at 1365 (affirming dismissal of complaint without leave to

amend prior to claim construction where patentee "ha[d] not explained how it might benefit from any particular term's construction").

Adnexus suggests that the district court erred by "construing" claim terms without giving Adnexus the benefit of discovery. BB28. That argument fails on multiple levels. First, discovery is not necessary to dismiss a case at the pleadings stage. *See, e.g.*, *Iqbal,* 556 U.S. at 684–86 ("Because respondent's complaint is deficient under Rule 8, he is not entitled to discovery, cabined or otherwise."). If that were the case, no complaint could ever be dismissed under Rule 12(b)(6). Further, Adnexus has not explained how discovery would affect claim construction, what allegations it would modify in light of discovery, or how any new allegations would satisfy the pleading standard. *See Ferrer v. Chevron Corp.*, 484 F.3d 776, 782–83 (5th Cir. 2007) (rejecting argument that plaintiff was entitled to discovery prior to dismissal of its complaint because plaintiff never sought discovery in the district court and did not explain what it might learn through discovery that could remedy the complaint's deficiencies); *Sw. Bell Tel., LP v. City of Houston*, 529 F.3d 257, 263 (5th Cir. 2008) (plaintiff was not entitled to discovery prior to dismissal of its complaint because when ruling on a motion to dismiss, "the court considers … only the allegations in the complaint."); *SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1118 (Fed. Cir. 1985) (en banc) ("A claim is construed in the light of the claim language, the other claims, the prior art, the prosecution history, and the specification, *not* in

light of the accused device."); *see also Cohesive Techs., Inc. v. Waters Corp.*, 543 F.3d 1351, 1367 (Fed. Cir. 2008) ("A claim is construed in the light of the claim language … not in light of the accused device." (cleaned up)).

Adnexus cites *McZeal v. Sprint Nextel Corp.* 501 F.3d 1354, 1357-58 (Fed. Cir. 2007), to support its plea for discovery, but *McZeal* is inapposite. As an initial matter, that case involved a pro se plaintiff subject to a less stringent pleading standard than Adnexus, which was and is represented by counsel. *Id.* at 1356. Further, in *McZeal*, the plaintiff sufficiently pleaded infringement despite not knowing "the specifics of how Sprint Nextel's purportedly infringing device works," which was to be determined through discovery. How the accused device works has nothing to do with claim construction, which is based on the intrinsic patent record and relevant extrinsic evidence. And Adnexus has not argued that it does not know how Meta Lead Ads works, nor has it explained why gaining such knowledge would provide it with facts to sufficiently plead infringement of the delivery method preferences limitation.

Like many of its other arguments on appeal, Adnexus's merits-based arguments against the district court's understanding of "delivery method preferences" are entirely new and are therefore forfeited. *See, e.g.*, *Google*, 980 F.3d at 863; *Sage Prods., Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1426 (Fed. Cir. 1997). There was no claim-construction dispute before the district court. Meta's motion expressly argued that delivery method preferences were distinct from the mere contact

information that Adnexus's complaint relied on, yet Adnexus's response was only that dismissal would be "premature" because "claim construction has not occurred yet." Appx403; Appx149-51; *see also* Appx165 (stating that Adnexus's original complaint was deficient because it alleged the "existence of contact fields" in a user profile but did not allege that the profile "includes a delivery method *preference*"). Adnexus never elaborated on what it believed was a proper construction, provided any intrinsic or extrinsic evidence to support its non-existent construction, or even explained why Meta's interpretation of contact information and delivery method preferences was incorrect. *See* Appx403. The Court should not entertain Adnexus's feigned "claim construction" dispute now.

In any event, Adnexus's newfound arguments are meritless. Neither the district court nor Meta improperly limited "delivery method preferences" to a single embodiment or imported limitations from dependent claims 2 and 3 into claim 1. BB25-26, 28. Adnexus suggests that Meta and the court interpreted "delivery method preferences" narrowly to require "soliciting a direct 'this-or-that' choice from the user." BB26. It similarly suggests that Meta's argument limited claim 1 to the specific delivery-preference-selection methods recited in claims 2 and 3. BB28. But neither Meta nor the district court adopted such a limited understanding of delivery method preferences. Neither required any particular method to practice that limitation; each simply observed that delivery method preferences are distinct from

contact information. As explained above, the '101 patent itself repeatedly makes the same distinction. Claim 1 uses "contact information" separately from "delivery method preferences," and the specification repeatedly distinguishes between the two concepts. *See, e.g.*, Appx24(9:2-47), Appx21-22(4:36-39, 4:44-48, 4:11-12, 4:59-62; 3:64-4:3, 5:38-39), Appx16(Fig. 2).

Adnexus next cites the specification's recitation of "gathering a recipient's email address" as purportedly describing a "means of obtaining a preferred information delivery method." BB27 (citing Appx20(1:38-44)). Nothing in that passage says that by providing an email address, a user has also provided their delivery method preferences. Moreover, the statement comes from the "Background" section of the '101 patent and describes an identified need to reduce the amount of "unsolicited emails" from advertisers to avoid customers developing an "unfavorable image of the advertiser." Appx20(1:25-44). It does not even refer to or describe the purported invention claimed in claim 1.

Adnexus also points to the specification's statement that "in an exemplary embodiment" additional information about a product of interest to a user "is delivered to the recipient as an e-mail that the recipient has logged and registered through previous interaction with the banner advertisements." BB27 (citing Appx20(2:57-64)). Again, nothing in that passage describes the email address as the user's delivery method preferences. It merely states that additional information can be sent to a

user's email address. Moreover, because the described embodiment does not include a delivery method preferences requirement, it does not describe the subject matter recited in claim 1. *See Baran v. Med. Device Techs., Inc.*, 616 F.3d 1309, 1316 (Fed. Cir. 2010) ("It is not necessary that each claim read on every embodiment.").

Adnexus's remaining citations (BB27) likewise describe the collection of contact information as distinct from delivery method preferences:

- a user may "type in contact information, such as an email address into a text field" and complete registration by responding to an email sent to that address (Appx21(4:11-17));
- a user may select a delivery method preference "*after* completing the registration process," i.e., *after* providing an email address (Appx21(4:44-48) (emphasis added));
- at a separate step, a user "is given the option to enter delivery preferences for future deliveries of additional information" (Appx22(5:3-5));
- a user may create a profile to store information, including "contact information" *and* "contact preferences" (Appx22(5:36-52));
- the method may use two distinct interface options, the first for "receiving [and storing] contact information" and the second for displaying, receiving, and storing delivery preferences (Appx23(7:49-63)); and
- the patent contains boilerplate language stating that embodiments are

exemplary (Appx23(8:28-67)).

In sum, the specification nowhere equates delivery method preferences and contact information—the two are always separate and discrete. Notably, the fact that Adnexus argues that a user's delivery method preferences could be "discerned" from the user's choice to provide limited contact information only underscores that the two are different. BB21-22.

## III. Even if Adnexus had pleaded infringement under the doctrine of equivalents, prosecution history estoppel prevents it from relying on that doctrine

Although the district court was not required to do so, it correctly concluded that the prosecution history prevents Adnexus from plausibly pleading infringement of the delivery method preferences limitation under the doctrine of equivalents. Prosecution history estoppel "prevents a patent owner from recapturing with the doctrine of equivalents subject matter surrendered to acquire the patent." *Honeywell Int'l, Inc. v. Hamilton Sundstrand Corp.*, 523 F.3d 1304, 1312 (Fed. Cir. 2008). Surrender of claim scope can occur through both claim amendments and arguments made to secure a patent. *See, e.g.*, *Pioneer Magnetics, Inc. v. Micro Linear Corp.*, 330 F.3d 1352, 1356 (Fed. Cir. 2003); *Amgen Inc. v. Coherus BioSciences Inc.*, 931 F.3d 1154, 1161 (Fed. Cir. 2019).

Here, Adnexus never pleaded infringement under the doctrine of equivalents with any specificity. Appx76 (FAC alleging infringement "literally and/or under the

doctrine of equivalents"); Appx79 (same). Although this Court has not clearly set forth the pleading standard for a doctrine-of-equivalents allegation, several cases suggest that such allegations must be pleaded with specificity just like other allegations. *See, e.g.*, *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1354 (Fed. Cir. 2018) (finding doctrine of equivalents sufficiently pleaded where complaint included detailed infringement contentions explaining how the accused product met the function-way-result test); *Vytacera Bio, LLC v. Cytomx Therapeutics, Inc.*, No. 20-333, 2023 WL 7125196, at *5–6 (D. Del. 2023) (boilerplate allegation of infringement "literally and/or under the doctrine of equivalents" did not sufficiently plead a doctrine-of-equivalents theory).

Adnexus's FAC included only boilerplate language purporting to allege infringement under the doctrine of equivalents, and its claim chart and infringement allegation for the delivery method preferences limitation alleged only literal infringement. *See* Appx76(¶17), Appx79(¶A); Appx101-02.[1] In each instance, Adnexus portrayed user contact information as delivery method preferences, not as *equivalent to* delivery method preferences. Moreover, Adnexus never alleged that contact information is insubstantially different from delivery method preferences, or that the two have substantially the same function, way, and result. Those are the

[1] To the extent the Court considers Exhibit D to the FAC, *see also* Appx119-20.

allegations it would have needed to make to plead infringement by equivalents. *See, e.g.*, *Nalco*, 883 F.3d at 1354.

Even if Adnexus had pleaded a doctrine-of-equivalents theory, the district court correctly held that prosecution history estoppel barred any such infringement theory. The applicant's original claims included a limitation for "identifying an email address associated with" a stored user-associated identifier, but did not include a limitation about a stored user profile comprising delivery method preferences. Appx186-89. After a rejection, the applicant added then-claim 18 (issued as claim 1), which newly included the delivery method preferences limitation. Appx244-45. The examiner rejected then-claim 18 over prior art that taught a user profile including delivery method preferences. Appx345-46. The applicant overcame that rejection by arguing that the prior art failed to teach "'determining … whether an identifier containing unique identifying information about the recipient is present on the computing device,' and subsequently performing alternate method steps based on the determination, as recited in claim 18." Appx359; *see* Appx378. The applicant distinguished now-claim 1 from the prior art based on the retrieval of delivery method preferences as part of the "alternate method steps" performed after determining the presence of an identifier. *See* Appx359. That distinction persuaded the examiner to allow the claim. Appx378.

Given that clear record, the district court correctly recognized that "the

prosecution history suggests that a limitation served to limit the scope of examination so as to obtain the patent, [so] the patentee cannot utilize the doctrine of equivalency to support a claimed infringement." Appx7; *see also* Appx9 ("the prosecution history precludes Plaintiff from relying on the doctrine of equivalents"). Adnexus could not "equate[] pre-filled forms based on specific contact information" with "the user's delivery method preference" to allege infringement under the doctrine of equivalents. Appx9.

Adnexus's attempts to overcome the district court's analysis are meritless. First, Adnexus claims that Meta's motion to dismiss never argued for prosecution history estoppel. BB30. That argument demands too much from Meta because Adnexus presented no doctrine-of-equivalents theory in its FAC. Moreover, Meta's motion discussed the significance of the prosecution history in terms of the role limitation 1f played during prosecution and why that critical role demanded the limitation be pleaded with "a higher level of detail." Appx151. Meta's motion thus clearly referred to the prosecution history and the limitations it imposed on the scope of Adnexus's claims. *See* Appx142, Appx147, Appx152. It was entirely proper for the district court to rely on those discussions when it addressed how that prosecution history was relevant to the dispute before it, especially given Adnexus's failure to elaborate on how the doctrine of equivalents might apply in this case.

Adnexus further argues that its prosecution history statements did not relate

to limitation 1f or the "delivery method preferences" element. BB30-32. Neither contention holds water. During prosecution, the applicant overcame an obviousness rejection by arguing that, unlike the prior art, the claimed method "subsequently perform[ed] alternate method steps." Appx359. Although the applicant's remarks did not literally recite "delivery method preferences," that does not matter. The remarks clearly referred to that limitation because it is one of the referenced "alternate method steps." Appx359; *see* Appx24. Ultimately, "[t]he relevant inquiry is whether a competitor would reasonably believe that the applicant had surrendered the relevant subject matter." *PODS, Inc. v. Porta Stor, Inc.*, 484 F.3d 1359, 1367 (Fed. Cir. 2007) (citation omitted); *cf. American Permahedge, Inc. v. Barcana, Inc.*, 105 F.3d 1441, 1446 (Fed. Cir. 1997) ("Prosecution history estoppel … is not limited to the claims with respect to which the applicant's statements were made.").

Adnexus finally posits that because issued claim 1 was never amended during prosecution, it cannot give rise to prosecution history estoppel. BB30-31. That is wrong as a matter of law. While the claim at issue was not *amended* during prosecution, the entire claim was *added* during prosecution after a rejection. *See* Appx292-93. As discussed above, the original claims did not recite a stored user profile comprising delivery method preferences, but new claim 18 did. Appx186-89; Appx244-45. This Court has repeatedly held that adding a new claim during prosecution gives rise to prosecution history estoppel: "That the added claim was not

amended during prosecution but was granted as filed does not preclude the application of prosecution history estoppel. When a claim limitation is added in order to overcome a specific cited reference, estoppel as to that limitation is generated whether the limitation is added by amendment to pending claims, or by the submission of new claims containing the limitation." *Pall Corp. v. Hemasure Inc.*, 181 F.3d 1305, 1312 (Fed. Cir. 1999); *see also, e.g.*, *Energy Transp. Grp., Inc. v. William Demant Holding A/S*, 697 F.3d 1342, 1359–60 (Fed. Cir. 2012); *Regents of Univ. of Cal. v. Dakocytomation Cal., Inc.*, 517 F.3d 1364, 1373–74 (Fed. Cir. 2008); *cf. Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 733–35 (2002) ("Where the original application once embraced the purported equivalent but the patentee narrowed his claims to obtain the patent or to protect its validity, the patentee cannot assert that he lacked the words to describe the subject matter in question.").

Regardless of the amendment status of claim 18, arguments made during prosecution to overcome a rejection routinely create an estoppel. *See, e.g.*, *Canton Bio Med., Inc. v. Integrated Liner Techs., Inc.*, 216 F.3d 1367, 1371 (Fed. Cir. 2000); *Elkay Mfg. Co. v. Ebco Mfg. Co.*, 192 F.3d 973, 981 (Fed. Cir. 1999). For example, in *Amgen*, the Court affirmed the district court's grant of a motion to dismiss for failure to state a claim based in part on argument-based estoppel. 931 F.3d at 1160–61. The patent applicant distinguished the prior art during prosecution by arguing

that it did not disclose the "particular combination of salts" claimed in the application. *Id.* at 1160. Accordingly, prosecution history estoppel prevented the patent owner from relying on the doctrine of equivalents to capture the accused infringer's product, and dismissal was the correct result. *Id.*

Similarly here, the applicant overcame the examiner's obviousness rejection by arguing that the prior art failed to disclose the specific claimed steps of "determining … whether an identifier … is present on the computing device" and "subsequently performing alternate method steps based on the determination." Appx359. Limitation 1f is one of the "alternate method steps" allegedly not found in the prior art. *See id.*; Appx24. Because the applicant overcame the examiner's rejection by arguing the criticality of such method steps, the claim limitation cannot be infringed by the mere equivalent of delivery method preferences.

## IV. The Court can affirm on the alternative ground that Adnexus did not plausibly allege infringement of limitation 1e

To the extent the Court finds reversible error in the district court's dismissal order, the Court should affirm on the alternative ground that Adnexus failed to plausibly plead infringement of limitation 1e. The Court can affirm a judgment on any ground supported by the record even if the district court did not consider that ground. *See, e.g.*, *MEHL/Biophile Int'l Corp. v. Milgraum*, 192 F.3d 1362, 1366 (Fed. Cir. 1999); *King Pharms., Inc. v. Eon Labs, Inc.*, 616 F.3d 1267, 1278 (Fed. Cir. 2010). Here, the parties fully briefed the issue of dismissal for failure to sufficiently plead

infringement of limitation 1e. *See* Appx147-49; Appx402-03; Appx418-20. The district court did not reach the issue because it dismissed the complaint based on Adnexus's failure to sufficiently plead infringement of the delivery method preferences limitation 1f. Appx8. If the Court reaches the limitation 1e issue now, it should affirm the dismissal of Adnexus's complaint.

An accused product must practice every claim limitation to infringe. That is true even for method claims describing alternative conditional limitations, such as claim 1 of the '101 patent. *See, e.g.*, *Lincoln Nat'l Life Ins. Co. v. Transamerica Life Ins. Co.*, 609 F.3d 1364, 1370 (Fed. Cir. 2010); *Hytera Commc'ns Co. v. Motorola Sols., Inc.*, 841 F. App'x 210, 215–16 (Fed. Cir. 2021). Adnexus thus was required to allege infringement of all claimed steps, including both the steps that occur when an identifier is present (limitation 1f-1i) *and* those that occur when an identifier is not present (limitation 1e).

Limitation 1e recites: "if the identifier … is not present on the computing device … generating a user profile associated with the recipient based on the contact information." Appx24. This limitation plainly requires generating a user profile after it is determined that no user identifier exists on the computing device. The specification similarly explains that the described method first determines "whether or not the recipient can be recognized by a cookie or other identifier placed on the visitor's computing device." Appx21-22(4:51-56, 6:1-7). If no identifier is present, the next

step is to provide "an interface option, such as the text field 158," and "the recipient enters his or her email address into the text field 158" and the system generates a user profile. Appx22(5:29-43). The user's computing device stores a "cookie" or other "identifier" so that the user may be recognized in later interactions. Appx21-22(4:19-24, 5:16-20). But if an identifier is present, the system takes an alternate path. Instead of generating a user profile, it "loads the recipient preferences from the visitor information database 106." Appx21-22(4:19-24, 4:57-59, 5:16-20).

The prosecution history also shows that the claimed method generates a user profile only after determining that no user identifier exists. As discussed above, the applicant overcame an obviousness rejection by arguing that the prior art failed to teach "'determining … whether an identifier containing unique identifying information about the recipient is present on the computing device,' and subsequently performing alternate method steps based on the determination, as recited in claim 18." Appx359; *see* Appx378. Therefore, the "alternate method step[]" of generating a user profile only happens once it is determined that no user identifier exists on the computing device.

Adnexus's FAC failed to plausibly allege infringement of limitation 1e. It only alleged generating a profile based on an *already existing* identifier, not in the absence of an identifier as claimed. Adnexus's Exhibit B claim chart for limitation 1d, which requires determining whether an identifier is present on the computing

device, alleged that "[w]hen a user logs in to Facebook, user details are stored in a cookie." Appx99. Adnexus alleged that cookies allow Meta Lead Ads to "automatically pull information from the person's profile to complete prefilled fields" later. Appx99. Then, for limitation 1e, Adnexus alleged that Meta Lead Ads start with the information associated with the user through a cookie and "prompt the target user to enter missing information that could not be pulled from their profile." Appx99-100. Adnexus thus relied on user information *already* stored in cookies, and then alleged that filling in *additional* information not yet associated with that user practiced the "generating a user profile" limitation. The allegations did not address generating a user profile in the *absence* of an identifier.

To the extent the Court considers Adnexus's Exhibit D to the complaint despite the forfeiture discussed above, Exhibit D suffered from the same fatal flaw: it completely ignored the "no identifier" element of limitation 1e. *See* Appx117-18. Instead, Exhibit D combined limitations 1d and 1e into a single step and analyzed only whether Meta Lead Ads determines whether an identifier is present (i.e., limitation 1d). Appx117-18. Adnexus alleged that the "claim limitation is met as to the operation of [1d]" and did not make any allegations about generating a user profile if there is no identifier present. Appx117.

Adnexus's allegations thus rested entirely on supplementing information already associated with an *existing* user identifier; Adnexus did not allege, for

example, that if no cookie is present, Meta Lead Ads prompts a user for information. Rather, Adnexus began from the premise that user information was already stored on the user's computing device. Adnexus did not plausibly plead infringement of limitation 1e, which requires certain actions when an identifier is *not* present.

In the district court, Adnexus argued that limitation 1e could alternatively be met by gathering information from third-party websites. Appx402. But there is no allegation about third-party websites in the FAC. *See* Appx99-100.[2] In any event, that argument gets Adnexus nowhere because it is still premised on the presence of existing cookies that reference other user profiles. Appx402. Nowhere has Adnexus identified action taken in the *absence* of an identifier. Appx418-19. The Court therefore can, and if necessary should, affirm the district court's dismissal of Adnexus's FAC on this alternative basis.

## V. The district court properly dismissed Adnexus's complaint with prejudice

Adhering to its standing order, the district court properly dismissed Adnexus's FAC with prejudice. Appx12. The standing order requires an early, written exchange of the defendants' bases for dismissal and affords the plaintiff an opportunity to amend its complaint in light of those bases. Appx62. The standing order states in no uncertain terms that, after this detailed exchange and amendment process, "if the

[2] To the extent the Court considers Exhibit D to the FAC, *see also* Appx117-18.

Court finds any Motion to Dismiss has merit, **the Plaintiff shall not be allowed an additional opportunity to amend its Complaint following a properly filed Motion to Dismiss**." Appx62-63 (emphasis original). Thus, as Adnexus recognized, the standing order "denies Plaintiffs leave to amend a complaint upon grant of a motion to dismiss." BB33.

The parties and the district court followed the standing order exactly: Meta provided Adnexus with a written communication detailing its arguments for dismissal of the complaint, the parties conferred regarding Meta's arguments, Adnexus amended its complaint, Meta subsequently filed its motion to dismiss raising the same grounds as stated in its letter, and the district court granted that motion and dismissed the complaint with prejudice. *See* Appx1-12; Appx69-82; Appx134-57; Appx143; Appx159 (¶¶4-5); Appx161-66.

Adnexus never challenged the district court's standing order or sought leave to further amend its complaint; those are new arguments raised for the first time on appeal. Because they were forfeited, the Court should not consider Adnexus's arguments. *See, e.g.*, *U.S. ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 387 (5th Cir. 2003) ("A party who neglects to ask the district court for leave to amend cannot expect to receive such a dispensation from the court of appeals."); *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 582 F.3d 1288, 1296 (Fed. Cir. 2009); *Sage Prods.*, 126 F.3d at 1426; *SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d

1312, 1320 (Fed. Cir. 2006). Rather, before the district court, Adnexus participated in the standing-order procedure without objection, amending its complaint in light of Meta's detailed explanations of insufficiency.

Adnexus now seeks leave to again amend its complaint, but it never asked the district court for that remedy. *See* Appx407; Appx10. Instead, Adnexus's opposition brief in the district court contended that the complaint should not be dismissed with prejudice because the motion should be denied—Adnexus did not further argue for dismissal without prejudice, and certainly did not seek leave to amend its complaint again. Appx407.

Even if the Court considers Adnexus's new challenges on appeal, none has merit. It is well settled that district courts have broad discretion to manage their dockets. *See, e.g.*, *Keranos, LLC v. Silicon Storage Tech., Inc.*, 797 F.3d 1025, 1035 (Fed. Cir. 2015). That is the express purpose of the standing order: "[t]o advance the case efficiently and minimize the cost of litigation." Appx62. In fact, this Court has approved of similar standing orders. For example, in *Lyda v. CBS Corp.*, 838 F.3d 1331, 1340–41 (Fed. Cir. 2016), this Court considered a district court judge's rule that, in the face of a motion to dismiss, the plaintiff may either amend the complaint or oppose the motion. The rule "curtaile[ed] leave to amend where the plaintiff declines to do so until after the court finds the pleadings insufficient." *Id.* at 1341. The Court "s[aw] no reason to disturb the district court's application of its own internal

rules, which fall within its broad power to control its docket." *Id.*

Adnexus complains that the standing-order procedure was "prejudicial" because Adnexus did not have a chance to proceed to discovery, which it hypothesizes would have led to better allegations in its complaint. BB33-34. That cannot be correct; if a lack of discovery were prejudicial, no complaint could ever be dismissed under Rule 12(b)(6). Rather, Adnexus was required to plausibly plead its infringement case based on the information available to it, as every plaintiff must. BB33-34; *see Iqbal,* 556 U.S. at 684–86 ("Because respondent's complaint is deficient under Rule 8, he is not entitled to discovery, cabined or otherwise.").

The Court should also reject Adnexus's request for leave to amend its complaint again. Because Adnexus never sought leave to amend its complaint before the district court, there is no reason to vacate the district court's dismissal to allow such a remedy. *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 776-77 (Fed. Cir. 2019) is instructive. There, the plaintiff did not move to amend its complaint before the district court, never filed a proposed amended complaint, failed to seek leave to amend even after the district court dismissed the complaint, and did not put forth any facts sufficient to overcome the dismissal. *Id.* at 776. Accordingly, there was "no basis to vacate the district court's dismissal with prejudice" to allow further amendment to the complaint. *Id.* at 776-77. Likewise, here, Adnexus never moved to amend its complaint before the district court (either in its opposition to Meta's motion to

dismiss or after the district court's ruling), it never submitted a proposed amended complaint, and it has not set forth any facts that could overcome the dismissal. Thus, there is no reason to undo the district court's dismissal and allow Adnexus yet another amendment to its complaint. *See id.*; *see also Willard*, 336 F.3d at 387–88 (rejecting request on appeal to remand for opportunity to amend complaint where plaintiff did not previously move to amend, had already amended the complaint, and failed to indicate what additional allegations could be added to cure deficiencies).

Finally, Adnexus accuses the district court of "effectively finding" non-infringement by dismissing its case, BB32, but the court did no such thing. Rather, the court thoroughly explained the motion-to-dismiss standard and considered whether Adnexus had "plead[ed] facts sufficient to show that [the] claim has substantive plausibility." Appx3-8. The court thus tested whether, taking the allegations in the complaint as true, Adnexus had sufficiently pleaded infringement. The court did not assess whether Adnexus had actually proven infringement at the pleadings stage. If Adnexus were correct that dismissing a complaint for failure to state a claim is improperly "finding" non-infringement, no complaint for infringement would ever be dismissed at the pleadings stage. In truth, Adnexus is disappointed that it could not sufficiently plead infringement, but that is Adnexus's failure, not the district court's.

## CONCLUSION

The Court should affirm the district court's dismissal of Adnexus's complaint for failure to state a claim.

Respectfully submitted,

PERKINS COIE LLP

/s/Nathan K. Kelley
Nathan K. Kelley

Counsel for Appellee Meta Platforms, Inc.

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 2024-1551

**Short Case Caption:** Adnexus Inc. v. Meta Platforms, Inc.

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

- [x] the filing has been prepared using a proportionally-spaced typeface and includes 11,172 words.

- [ ] the filing has been prepared using a monospaced typeface and includes ___________ lines of text.

- [ ] the filing contains ___________ pages / ___________ words / ___________ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. ___________).

Date: 08/30/2024

Signature: /s/Nathan K. Kelley

Name: Nathan K. Kelley