**2024-1551**

# United States Court of Appeals for the Federal Circuit

ADNEXUS INC.,

*Plaintiff-Appellant,*

– v. –

META PLATFORMS, INC.,

*Defendant-Appellee.*

*On Appeal from the United States District Court for the Western District of Texas in Case No. 23-cv-00152-JKP Jason Kenneth Pulliam, Judge*

## REPLY BRIEF FOR PLAINTIFF-APPELLANT

CHARLES S. COTROPIA
1756 Bison Meadow Lane
Heath, TEXAS 75032
(214) 725-1385
ccotropia@icloud.com

*Counsel for Plaintiff-Appellant*

OCTOBER 11, 2024

CP COUNSEL PRESS (800) 4-APPEAL • (332696)

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........ ii

PRELIMINARY STATEMENT ........ 1

ARGUMENT ........ 4

I. The District Court and Meta Fail to Apply the Claim as Written ........ 4

II. District Court Failure to Consider Exh. D Allegations Is Inexcusable ........ 9

III. Meta's Alternative Grounds Argument is Legally Unsupportable ........ 14

IV. District Court's Standing Order Prejudiced Adnexus ........ 16

CONCLUSION ........ 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Applera Corp. v. Illumina, Inc.*,
375 F. App'x 12 (Fed. Cir. 2010)....................15

*Arctic Cat Inc. v. Bombardier Rec. Prods.*,
876 F.3d 1350 (Fed. Cir. 2017)....................10

*Basic Capital Mgmt. v. Dynex Capital, Inc.*,
976 F.3d 585 (5th Cir. 2020)....................9

*Cybersettle, Inc. v. Nat'l Arbitration Forum, Inc.*,
243 F. App'x 603 (Fed. Cir. 2007)....................15

*Disc Disease Solutions Inc. v. VGH Solutions, Inc.*,
888 F.3d 1256 (Fed. Cir. 2018)....................2

*Ex Parte Schulhauser*,
2016 WL 6277792 (P.T.A.B. Apr. 28, 2016)....................15, 16

*Hormel v. Helvering*,
312 U.S. 552 (1941)....................10

*Hytera Communs. Co. v. Motorola Sols., Inc.*,
841 F. App'x 210 (Fed. Cir. 2021)....................14, 15, 16

*Lincoln Nat'l Life Ins. Co. v. Transamerica Life Ins. Co.*,
609 F.3d 1364 (Fed. Cir. 2010)....................14

*Singleton v. Wulff*,
428 U.S. 106 (1976)....................10

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007)....................9, 10

**Statutes & Other Authorities:**

Fed. R. Civ. P. 15(a)(2)....................18

## PRELIMINARY STATEMENT

Meta's Response ("RB") carefully and purposefully avoids the crux of the evidence and argument presented in Adnexus' Opening brief ("BB"). Meta does so because it has no meaningful answers to Adnexus' meritorious challenges to the rationale and decision entered by the District Court on Meta's Motion to Dismiss. Unable to respond directly, Meta resorts to repeated misstatement of Adnexus's positions followed by argument on issues that are not truly in dispute.

Namely, Meta repeatedly asserts that Adnexus' positions require a finding that the claimed "contact information" be one-and-the-same as "delivery method preferences." RB15-16, RB26-27. Meta goes on to argue that these claim elements are distinct from one another, as if this settles the point on this appeal. In truth, this line of argument is a red herring that completely sidesteps and avoids the relevant dispute. Adnexus contends that Claim 1 does not require "delivery method preferences" to be directly and explicitly provided by a recipient for delivery method preferences to comprise part of a user profile claimed. Accordingly, Adnexus' First Amended Complaint ("FAC") alleges that delivery method preferences are ascertained from consideration of other information provided by a user, including consideration of the "contact information" that a user elects to provide to Facebook. BB20-21. Beyond this, the FAC includes links to evidence showing that in some

applications advertisers using Lead Ads use "custom questions" to seek preferences from users. BB21-25.

Meta cannot refute that these allegations are sufficient to plausibly allege practice of the "delivery method preferences" limitation, especially at the pleadings stage when all facts and inferences are viewed in the light most favorable to Adnexus. *Disc Disease Solutions Inc. v. VGH Solutions, Inc.*, 888 F.3d 1256, 1260 (Fed. Cir. 2018). Meta therefore resorts to bald denials, adoption of the narrowest interpretation of Limitation 1[f] which would only be satisfied by direct input from a user to select a single, most preferred delivery method, and to repeating its inapposite refrain that a recipient, or user, "providing contact information is not the same as ***providing*** a preferred delivery method." RB26-27.

Meta's Response adopts and applies the unduly narrowed claim constructions adopted by the District Court even as it denies that any narrowed interpretation of Limitation 1[f] was applied by the District Court. Meta wrongly argues that "Adnexus is not entitled to the implausible inference that by merely providing an email address ***for use with a Facebook profile***, a user ***necessarily prefers*** to be contacted by advertisers at that address." RB1. This is nothing more than a continuation of the District Court's finding that an email address comprises "contact information" and that "contact information" must be mutually exclusive and wholly apart from any indication of a "delivery method preference." Appx9. The District

Court provided no rationale for mandating mutual exclusivity of these claim terms such that delivery method preferences could not be derived from the contact information a user elects to share with Facebook. Even worse, the District Court and Meta fail to account for this interpretation being in direct conflict with the express language of Claim 1, which requires "generating a user profile associated with the recipient based on the contact information" and requires "the user profile comprises at least delivery method preferences." Appx24. Any finding that "delivery method preferences" cannot be ascertained based upon a user providing certain "contact information" reads out the very embodiment of Claim 1. Meta's Response is devoid of any argument addressing or refuting this truth.

Meta cannot explain away this error by the District Court, which it admits is the underlying basis for grant of Meta's Motion to Dismiss. RB1, RB15. Meta likewise cannot explain away the District Court's failure to consider the allegations and cited evidence presented in Exhibit D to the FAC. RB23-24. This is clear error by the District Court that, standing alone, warrants vacating its grant of Meta's Motion.

In tacit acknowledgment of the merit to Adnexus' challenges, Meta pivots away from arguing in support of the District Court's decision to desperately argue for dismissal of the FAC on alternative grounds not reached by the District Court. Meta raises the purported failure of the FAC to allege sufficient facts to plausibly

show practice of Limitation 1[e] by Meta's Lead Ads. This Limitation presents alternative method steps to those of Limitation 1[f] that are performed only when the opposite pre-condition that an "identifier… is not present" exists. Appx24. The law does not require a showing that each of two alternative method steps are practiced to state a claim for infringement, as Meta contends, mooting its arguments regarding Limitation 1[e]. Indeed, the very case law Meta cites in support of its 1[e] argument do not set forth such a requirement.

The plain takeaway from Meta's Response is that it cannot meet Adnexus eye-to-eye on the merits of this appeal. The arguments presented therein are largely inapposite to the actual disputes at issue in this appeal. Regardless, there is no argument that Meta could make that could immunize the District Court's grant of Meta's Motion to Dismiss from the District Court failing to consider the entirety of the FAC and its failure to view all allegations and inferences in the light most favorable to Adnexus. The District Court's Order should therefore be reversed or, at a minimum, vacated.

## ARGUMENT

### I. The District Court and Meta Fail to Apply the Claim as Written

In its Response, Meta describes certain limitations of asserted Claim 1, designated as Limitation 1[e], to require, in part, "collecting ***contact information*** and generating a user profile ***based on the collected information***." RB9 (emphasis

added), RB21. Meta also acknowledges that Limitation 1[f] requires that the user profile "includes 'at least delivery method preferences.'" RB9, 21. Accordingly, Meta cannot deny that the claimed delivery method preferences are discernible from contact information. This is precisely what is contemplated by the express language of Claim 1 – according to which a user profile comprising delivery method preferences and demographic information is generated based only upon received contact information. Appx24.

This aligns with the teachings of the specification which describes email address(es) as a type of "contact information" that a user may provide in connection with creating a user profile. Appx21 (4:11-12). The specification also expressly teaches that "gathering a recipient's email address" is one exemplary way for obtaining a "preferred information delivery method" of that recipient. Appx20 (1:38-44). More specifically, the specification describes the solutions it discloses as comprising "a system and method of gathering ***a recipient's email address, or other preferred information delivery method***, and sending targeted advertisements ***via this delivery method*** in response to the recipient's subsequent requests for information made through simple interactions with a banner advertisement while browsing the Internet." Appx20 (1:38-44) (emphasis added). The specification goes on to teach that "to create the profile, the recipient may enter additional preferences

and contact information in the confirmation email, such as a name, a cellular phone number or an instant message screen name." Appx22 (5:36-41).

It is clear from the foregoing disclosures that the '101 Patent does not describe either "contact information" or "delivery method preferences" in manners that connote complete, mutual exclusivity of their respective scopes. Stated another way, the specification regards information such as email addresses, phone numbers, and screen names, each of which represent logical locations for receiving information, as being both a type of contact information and usable as an indicator of delivery method preferences. Certainly, there is no disclosure within the specification that precludes consulting contact information provided by a user to generate delivery method preferences within the user's profile.

If such preclusive language were present in the specification or within the limitations of asserted Claim 1, Meta surely would have raised it in its Response. Meta cannot and does not cite to any such disclosure. Instead, Meta baselessly presses forward in support of the strained interpretation of these claim elements adopted by the District Court. Meta does so even as it freely admits that users provide contact information to "indicate[] how a user may be contacted." RB21. Yet, this same contact information is alleged to be unusable to indicate a delivery method preference. Not only is this illogical, it directly conflicts with the plain language of Claim 1 which states that contact information is used to generate a user profile, and

that a user profile would comprise delivery method preferences. Appx24 (9:22-25, 9:31-35).

In effect, Meta attempts to justify the District Court's reliance on an unduly narrowed interpretation of these claim elements which reduced the scope of Claim 1 to cover only one exemplary embodiment. According to this embodiment, delivery method preferences can only be expressly provided by a user through an express selection of one means of communication for reaching the user. The user must first indicate that it can receive advertisement information via a specified communication means, such as via email, for example. Then the user is separately prompted to provide a logical address to which additional information shall be sent, i.e. the user's email address. No alternatives to this two-step process are permitted, such as by providing several text fields to a user into which the user would only enter the logical address(es) through which the user preferred to be contacted.

The disallowance of any manner for generating delivery method preferences apart from their being directly and expressly provided by a user in response to a prompt for this information finds no basis in the specification or asserted claims. Meta argues that neither it nor the District Court have applied Limitation 1[f] in this narrowed manner. Yet, throughout its Response, Meta consistently describes this Limitation as if it includes a limitation requiring the user to provide delivery method preferences. RB26-27 ("Providing contact information is plainly not the same as

***providing*** a preferred delivery method…"); RB28 ("Adnexus fails to cite even a suggestion to ***collect*** delivery method preferences, let alone facts showing ***actual collection*** and storage of such information."); RB29 ("provision of contact information does not ***identify*** delivery method preferences…").

But Claim 1 does <u>not</u> require that the delivery method preferences be directly provided by the recipient, as Meta and the District Court have. Rather, Claim 1 contemplates generation of a user profile comprising delivery method preferences from contact information provided by the recipient. Appx24 (9:22-25, 9:31-35). Conversely, dependent claims 2 and 3 do include limitations that expressly require displaying an interface with selectable delivery methods for receiving an indication from the recipient of at least one delivery method. Appx24 (10:1-19) Importantly, this received information is then used for ***"updating*** the delivery method preferences in the user profile." Appx24 (10:8-10, 10:18-19). Of course, an update can only occur when delivery method preferences already exist within the user profile. Nothing in Claim 1, nor the specification, requires that the manner for updating preferences must be employed to initially set them. The District Court erred by importing this requirement into Claim 1 and relying on it to disregard the allegations presented in the FAC.

## II. District Court Failure to Consider Exh. D Allegations Is Inexcusable

Meta acknowledges that Exh. D to the FAC was newly added as part of the FAC, that it "provided 'a preliminary infringement analysis,'" and that its addition was done in response to Meta alleging that the original complaint "does not allege that this profile includes a delivery method preference." RB13, RB23, RB24. Yet, Meta contends that the District Court's was somehow not obligated to consider Exh. D to the FAC when deciding its Motion to Dismiss, despite the FAC introducing Exh. D as evidence to show "that the '101 patented methodology is practiced by the Lead Ads program." Appx77 (⁋21); Appx110-126.

Meta is wrong. Guidance from the Supreme Court is unequivocal in its mandate that a court must consider the complaint ***in its entirety and any attached documents***, documents incorporated by reference or matters of which a court may take judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Basic Capital Mgmt. v. Dynex Capital, Inc.*, 976 F.3d 585, 589 (5th Cir. 2020). The FAC introduces Exh. D within paragraphs under the section heading "Count I – Patent Infringement of the '101 Patent." Appx76-79. It is presented as evidence detailing an infringement analysis done by Adnexus to show infringement of claims of its '101 Patent. Appx77 (⁋21); Appx110-126.

Meta's contention that Exh. D need not be considered because it is presented solely as support for Adnexus' claim of willful patent infringement is misplaced.

RB24. Aside from this being no basis for excusing the requirements set forth by the Supreme Court in *Tellabs*, this contention neglects that pleading willfulness requires a plausible showing that Meta "actually knew or should have known that its actions constituted an unjustifiably high risk of infringement" of the '101 Patent. *Arctic Cat Inc. v. Bombardier Rec. Prods.*, 876 F.3d 1350, 1371 (Fed. Cir. 2017). In short, willful infringement cannot be alleged without making the threshold showing that the asserted patent has been infringed. Meta knows this to be true. Meta's Motion to Dismiss attacked the sufficiency of Adnexus' willful claim solely on the grounds that the FAC purportedly "still fail[s] to identify any act of ***direct*** infringement performed by any actor." Appx155.

Meta contends that any argument regarding Exh. D may not be considered in this appeal proceeding due to forfeiture. However, forfeiture applies to limit issues decided by an appellate court to include only those passed upon below. *Singleton v. Wulff*, 428 U.S. 106, 120 (1976). The purpose of this rule is to avoid surprise on appeal relating to issues about which a party had no opportunity to introduce evidence. *Id.* "Certainly there are circumstances in which a federal appellate court is justified in resolving an issue not passed on below, as where the proper resolution is beyond any doubt… or where 'injustice might otherwise result.'" *Id.* (quoting *Hormel v. Helvering*, 312 U.S. 552, 557 (1941)).

Meta cannot pretend to be surprised by Adnexus' reliance on an "infringement analysis" claim chart attached to its FAC when the filing of the FAC was prompted by Meta's alleging that the original complaint failed to adequately plead direct infringement. Further, any claim of surprise is undone by Meta's specifically identifying the paragraph of the FAC that introduces Exh. D in its Motion to Dismiss, noting that "the Amended Complaint alleges direct infringement of the '101 Patent, but also adds new allegations of induced infringement, contributory infringement, and willful infringement. Appx144 (⁋11) (referencing Appx76-79 (¶16-29 of FAC)). Meta understood that the allegations presented throughout the referenced paragraphs of the FAC all related to Adnexus' infringement claims against Meta and would be relied upon to plausibly state its claims. Accordingly, there is no basis for asserting forfeiture of any argument showing satisfaction of the pleading standard in the FAC which relies on allegations within Exh. D.

Had the District Court undertaken to consider the evidence presented in Exh. D, it would have found that the Facebook sources hyperlinked throughout completely refute any denial by Meta that its Lead Ads products infringe Claim 1. Appx110-126. For example, in view of the linked materials in Exh. D, Adnexus is undoubtedly entitled to the plausible inference that a user providing an email address to Facebook is indicative of that user preferring to receive communications through Facebook at that address:




Appx125 (Source 1) (reproduced as screen capture image Appx431);
*see, also,* Appx96, Appx98, Appx118

These images present a sequence of interactions between a user and an exemplary Lead Ad. Upon clicking on the ad, a form appears that is auto-populated with information from the user's profile that "will be used to contact you." The specific contact information included represents "delivery preferences" for the user, which are then used by the advertiser to send further information to the user. Users can modify, change, or update the specific information included within the user's profile that Facebook uses to "auto-fill forms for ads." Other linked materials describing operation of the Lead Ads products shows that advertisers may develop custom forms and questions that are presented to a user. Among those are exemplary instances in which a contact preference is directly solicited:




Appx125 (Source 12) (reproduced as screen capture image Appx432);
*See, also,* Appx118, Appx121

The Lead Ads product therefore accommodates the use of existing delivery method preferences within a user profile for use in selecting information used to auto-populate Lead Ads forms, and also accommodates the use of custom questions and/or user confirmation of pre-filled information to affirm or modify delivery method preferences for use by the advertiser. In view of these specific examples, as well as the other evidence presented in Exhibits B and D to the FAC, it is clear that Lead Ads implements user profiles comprising at least delivery method preferences in the manner claimed at Limitation 1[f].

## III. Meta's Alternative Grounds Argument is Legally Unsupportable

Meta alleges that the FAC must present allegations showing practice of Limitation 1[e] to survive its Motion to Dismiss. Limitation 1[e] presents a series of method steps that are performed only when an "identifier… is not present on the computing device." Appx24 (9:17-28). Conversely, Limitation 1[f] and the remainder of Claim 1 present alternative method steps that are performed in the opposite scenario – i.e., when the "identifier… is present on the computing device." Appx24 (9:29-47). Two distinct, alternative sequences of method steps are presented. Because they correspond to opposite pre-conditions based on a binary determination, there is no scenario that could trigger the performance of both alternative sequences of steps. Nonetheless, Meta avers that Adnexus is required to plead facts showing satisfaction of both alternative limitations to plead infringement. Meta is incorrect. Neither of the two cases it cites set out any such requirement for pleading infringement.

In *Lincoln Nat'l*, for example, this Court rejected the patent owner's assertion that a claim limitation was written as a conditional limitation in the first place. *Lincoln Nat'l Life Ins. Co. v. Transamerica Life Ins. Co.*, 609 F.3d 1364, 1370 (Fed. Cir. 2010) (rejecting argument that a claim limitation was conditional). Discussion of the *Lincoln Nat'l* holding presented in *Hytera Comms. Co. v. Motorola Sols., Inc.* affirms the same. *Hytera Communs. Co. v. Motorola Sols., Inc.*, 841 F. App'x 210,

215 (Fed. Cir. 2021)("The patent owner argued that the 'even if' clause was conditional and thus 'need not be performed unless account exhaustion occurs.' We rejected that argument…").

The *Hytera* Court goes on to explain other Federal Circuit decisions regarding whether satisfaction of conditional limitations must be shown to prove infringement. *Id*, at 216-218. One such decision held "[i]f the condition for performing a contingent step is not satisfied, the performance recited by the step need not be carried out in order for the claimed method to be performed." *Cybersettle, Inc. v. Nat'l Arbitration Forum, Inc.*, 243 F. App'x 603, 607 (Fed. Cir. 2007) (nonprecedential); *see, also, Applera Corp. v. Illumina, Inc.*, 375 F. App'x 12, 21 (Fed. Cir. 2010) (nonprecedential) ("repeating… until…" limitation held to implicitly require discontinuance of repeating steps upon satisfaction of "until" condition).

The *Hytera* Court also discussed relevant decisions from the PTAB on treatment of conditional limitations. *Hytera*, 841 F. App'x at 216 (citing *Ex Parte Schulhauser*, 2016 WL 6277792 (P.T.A.B. Apr. 28, 2016)("The Board's decision in *Schulhauser* is closer to the situation we have in this case because it presented two alternative conditions and described a response to each."). In *Schulhauser*, the Board affirmed an obviousness rejection despite no evidence being presented to show the prior art practiced steps corresponding to one of two alternative triggering conditions. *Schulhauser*, 2016 WL 6277792 at *5. The Board reasoned that "claim

1 as written covers at least two methods, one in which the prerequisite condition for the triggering step is met and one in which the prerequisite condition for the determining step is met." *Id.* at *4. On this basis, the claims at issue in *Hytera* were distinguished from those in *Schulhauser* to explain why a showing that every alternative conditional limitation was not required in *Schulhauser*.

This same rationale applies with respect to Claim 1 of the '101 Patent. Limitations 1[e] and 1[f], respectively, present two alternative sequences of method steps that are triggered by the existence or non-existence of an "identifier" on the recipients computing device. Appx24 (9:12-30). Only one of the two alternative method paths can be triggered for any instance in which the claimed method is practiced. Accordingly, Adnexus need not allege facts showing satisfaction of both 1[e] and 1[f] to show infringement of Claim 1 by Lead Ads.

### IV. District Court's Standing Order Prejudiced Adnexus

Adnexus' Complaint and its FAC both cite to customer-facing documentation regarding the Lead Ads products and services to support the infringement allegations presented therein. It does so <u>not</u> because this evidence has been determined to be the best evidence for proving infringement, but, instead, because that is the extent of the evidence available to Adnexus when drafting its Complaint and FAC. The District Court failed to appreciate this practical limitation on what Adnexus could cite to in support of its claims, just as its Standing Order fails to appreciate that evidence

showing infringement would largely, if not exclusively, be confidential information possessed exclusively by the infringer.

Better, direct evidence showing infringement may exist in Meta's internal documentation describing the features and functionality of Lead Ads which may not be included in customer-facing, publicly accessible documents. Such evidence is inaccessible to a patent plaintiff ahead of discovery. The District Courts failure to acknowledge these practical realities attendant to patent infringement litigation led to its erroneous conclusion that Adnexus' had been provided sufficient opportunity to "state[] its best case" despite its limited access to only public documents. Appx11. This is incorrect. At the pleadings stage, Adnexus is entirely beholden to what Meta chooses to make publicly accessible through the product documentation it opts to publish. It is in this context that Adnexus cites to documentation relating to "pre-filled forms," which is presented to show the extent of user information obtained by Facebook and used by it to generate user profiles.

Application of the District Court's Standing Order can have the undesirable effect of sheltering infringers from legitimate infringement claims. It is the alleged infringer who oftentimes has exclusive access to internal documents and information best suited for proving infringement. Meanwhile, a patent plaintiff may only have access to publicly available, customer facing documents that omit the type of

granular detail that may be necessary to show infringement. The District Court's Standing Order does not account for the common scenario. Appx62-63,

In this case, application of the Standing Order resulted in dismissal with prejudice of Adnexus' infringement claims at the very first involvement of the District Court. Appx11. Leave to amend is pre-emptively denied under the Standing Order, making it inconsequential whether leave was sought from the District Court or not. Appx10-11; Appx62-63. The requirements and strictly applied Standing Order resulted in unjust and incorrect conclusions that do not align with Rule 15 which instructs that a "court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).

## CONCLUSION

This appeal raises a simple and easily resolved question. Namely, is it plausible that the information that a Facebook user elects to provide for use by Facebook and its Lead Ads products and services is usable to identify a delivery method preference as part of that user's profile? Surely, the answer must be that it is plausible. Information optionally provided for use by Facebook to send communications to the user implicitly indicates that user's preferences for how it receives communications from Facebook. This is what is alleged in the FAC. Those allegations undoubtedly satisfy the plausibility standard, especially when all facts and inferences must be considered in the light most favorable to Adnexus.

The District Court reached the opposite conclusion because it failed to consider the entirety of the allegations presented in Adnexus' FAC, attached exhibits, and cited materials. It also failed to view the factual allegations and inferences that it did consider in the light most favorable to Adnexus. Instead, the District Court adopted a narrow construction of certain claim terms that directly conflicts with the express language of the asserted claim, then relied upon this construction to wholly disregard allegations made in the FAC showing practice of the "delivery method preferences" limitation. This error was then compounded by the District Court erroneously concluding that prosecution history estoppel barred presentation of any equivalents infringement theory. These findings are legally and factually unsupportable, and should be reversed.

Dated: October 11, 2024

Respectfully submitted,

CHARLES S. COTROPIA
/s/ Charles S. Cotropia

State Bar No. 04858600
ccotropia@icloud.com
1756 Bison Meadow Lane
Heath, Texas 75032
Telephone: 214 725-1385

ATTORNEY FOR
APPELLANT

FORM 19. Certificate of Compliance with Type-Volume Limitations

Form 19
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 24-1551

**Short Case Caption:** Adnexus Incorporated v Meta Platforms Inc.

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes 4106 words.

☐ the filing has been prepared using a monospaced typeface and includes ________ lines of text.

☐ the filing contains ________ pages / ________ words / ________ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. ________).

Date: 10/11/2024

Signature: /s/ Charles S. Cotropia

Name: Charles S. Cotropia

Save for Filing