# United States Court of Appeals for the Federal Circuit

---

**ADNEXUS INC.,**
*Plaintiff-Appellant*

**v.**

**META PLATFORMS, INC.,**
*Defendant-Appellee*

---

2024-1551

---

Appeal from the United States District Court for the Western District of Texas in No. 6:23-cv-00152-JKP, Judge Jason Kenneth Pulliam.

---

Decided: December 5, 2025

---

CHARLES COTROPIA, Heath, TX, argued for plaintiff-appellant.

NATHAN K. KELLEY, Perkins Coie LLP, Washington, DC, argued for defendant-appellee. Also represented by DAN L. BAGATELL, Hanover, NH; TARA LAUREN KURTIS, Chicago, IL.

---

Before PROST, TARANTO, and STARK, *Circuit Judges*.

STARK, *Circuit Judge*.

Adnexus, Inc. ("Adnexus") appeals from the dismissal of its patent infringement lawsuit against Meta Platforms, Inc. ("Meta") for failure to state a claim. We vacate and remand for further proceedings.

I

Adnexus owns U.S. Patent No. 8,719,101 (the "'101 patent"), which claims a "[s]ystem and method of online advertising." The '101 patent purports to enable internet advertising companies "to promote products and services to potential customers" without "the risk o[f] pushing numerous advertisements to potential customers that are not relevant or desired by the recipient," as doing so can cause "the potential customer [to] build[] an unfavorable image of the advertiser pushing such unwanted advertisements." '101 pat. at 1:13-36. According to the patent, "[w]hat is needed is a system and method of gathering a recipient's email address, or other preferred information delivery method, and sending targeted advertisements via this delivery method in response to the recipient's subsequent requests for information." *Id.* at 1:38-42.

Adnexus sued Meta in the Western District of Texas for infringement of the '101 patent. Specifically, Adnexus alleged that Meta's Lead Ads product ("Lead Ads") infringes at least claim 1 of the patent, reproduced below:

> [1a] A method of online advertising, comprising:
>
> [1b] providing an advertisement associated with a first party for display in a network communication delivered to a computing device of a recipient during a browsing session, wherein the advertisement contains an interactive element displayed within the advertisement, and wherein the network communication is associated with a second party different than the first party;

[1c] receiving an indication that the recipient activated the interactive element displayed within the advertisement;

[1d] determining, in response to the receiving the indication, whether an identifier containing unique identifying information about the recipient is present on the computing device;

[1e] if the identifier containing unique identifying information about the recipient is not present on the computing device:

> causing a text field to be displayed in at least a portion of the advertisement;
>
> receiving contact information inputted into the text field by the recipient;
>
> generating a user profile associated with the recipient based on the contact information; and
>
> causing an identifier associated with the user profile to be stored on the computing device of the recipient; and

[1f] if the identifier containing unique identifying information about the recipient is present on the computing device:

> *retrieving a user profile associated with the recipient from a visitor information database using at least a portion of the identifier, wherein the user profile comprises at least delivery method preferences and demographic information*;

[1g] retrieving additional information associated with the advertisement based on at least a portion of the user profile associated with the recipient;

> [1h] delivering the additional information to the recipient based on the delivery method preferences, the delivering being performed without interrupting the browsing session of the recipient; and
>
> [1i] recording the activation by the recipient of the interactive element as recipient tracking data in an analytics server, the recipient tracking data being associated with the unique identifying information about the recipient.

*Id.* at 9:2-47 (bracketed numbering and emphasis added).[1]

After Meta notified Adnexus of its intent to move to dismiss the complaint for failure to state a claim on which relief may be granted, Adnexus filed an amended complaint (the "Amended Complaint"). J.A. 72-82, 161-66. Appended to the Amended Complaint were a claim chart (Exhibit B) and preliminary infringement contentions (Exhibit D), both of which purported to map the limitations of claim 1 of the '101 patent onto Lead Ads. J.A. 77-78, 95-106, 110-26. Meta moved to dismiss the Amended Complaint, including its claims for direct, indirect, and willful infringement. J.A. 134-57. In its motion, Meta argued, among other things, that the Amended Complaint failed to state an adequate claim of direct infringement because it failed to plausibly allege that Lead Ads practices limitation [1f], which requires retrieval of a "user profile compris[ing] at least delivery method preferences" for delivery of online ads to a user. J.A. 149-51.

The district court granted Meta's motion to dismiss. J.A. 1. It determined that the Amended Complaint "lacks sufficient factual allegations to support the delivery-method-preferences limitation set out in element [1f]" because it "makes no allegation that Meta Lead Ads retrieves

---

[1] We adopt the claim limitation numbering supplied by the parties and relied upon in their briefs.

any user profile that includes any delivery method preferences." J.A. 8. The district court rejected Adnexus' contention that its claim charts – which pointed to Facebook users' profiles and particularly their prefilled contact information – depicted a plausible theory of how Lead Ads satisfies this claim element. J.A. 9. Instead, the court concluded that "contact information [is] sufficiently distinct from delivery method preferences" such that "contact information" cannot be a "delivery method preference." *Id.* This was enough to require dismissal of the Amended Complaint's literal infringement claim. *Id.* The district court went on to dismiss Adnexus' doctrine of equivalents theory because "the prosecution history precludes [Adnexus] from relying on the doctrine of equivalents."[2] *Id.*

Having concluded that Adnexus failed to adequately allege direct infringement, the court also dismissed the claims for indirect and willful infringement. J.A. 10. The dismissal was "with prejudice," as the court reasoned that Adnexus had "already pled [its] 'best case.'" *Id.* (quoting *Brewster v. Dretke*, 587 F.3d 764, 768 (5th Cir. 2009)).[3]

---

[2] The district court did not reach Meta's additional grounds for dismissal, including that the Amended Complaint failed to plausibly allege infringement of claim limitations [1d], [1e], and [1h]. J.A 10, 146-52.

[3] The district court's dismissal with prejudice was consistent with its Standing Order, which requires defendants to share their grounds for dismissal with plaintiffs prior to moving to dismiss and allows plaintiffs automatic leave to file one amended complaint thereafter. *See* J.A. 10-11, 62-63. "Under this practice, . . . if the Court finds any Motion to Dismiss has merit, the Plaintiff shall not be allowed an additional opportunity to amend its Complaint following a properly filed Motion to Dismiss." J.A. 62-63

Adnexus timely appealed. The district court had jurisdiction under 28 U.S.C. §§ 1331 & 1338(a), and we have jurisdiction under 28 U.S.C. § 1295(a)(1).

## II

We review a district court's dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure under the law of the applicable regional circuit. *See Hawk Tech. Sys., LLC v. Castle Retail, LLC*, 60 F.4th 1349, 1356 (Fed. Cir. 2023). The Fifth Circuit reviews the grant of a motion to dismiss de novo. *See Heinze v. Tesco Corp.*, 971 F.3d 475, 479 (5th Cir. 2020).

In evaluating a motion to dismiss under Fifth Circuit law, the court is required to "liberally construe[]" all allegations in the complaint and draw all reasonable inferences in the light most favorable to the plaintiff. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000); *see also Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1347 (Fed. Cir. 2018) ("When ruling on a motion to dismiss under Rule 12(b)(6), the court accepts all well-pleaded factual allegations as true and construes all reasonable inferences in favor of the plaintiff."). The court's consideration is "limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (US.), LP v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

To survive a motion to dismiss, a complaint must state a claim for relief that is at least plausible. *See Ashcroft v.*

---

(emphasis omitted). Adnexus challenges the Standing Order as violative of Federal Rule of Civil Procedure 15's liberal standard for "freely" amending pleadings. Open. Br. at 33; Reply Br. at 18. Because we are vacating the court's dismissal order, we need not reach this issue (or Meta's contention that it is forfeited).

*Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1352 (Fed. Cir. 2021). Our review of a district court's determination that a complaint fails to state a claim that is plausible is de novo. *See AlexSam, Inc. v. Aetna, Inc.*, 119 F.4th 27, 39-40 (Fed. Cir. 2024).

"We apply our own law to the specific question of whether a complaint states a claim of patent infringement on which relief may be granted." *Id.* at 35. "A plaintiff is not required to plead infringement on an element-by-element basis." *Bot M8*, 4 F.4th at 1352. Instead, it is enough that a complaint places the alleged infringer on notice of what activity is being accused of infringement. *Id.*; *see also Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256, 1260 (Fed. Cir. 2018). Still, "[t]here must be some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim." *Bot M8*, 4 F.4th at 1353.

## III

Adnexus argues that the district court erred in finding that the Amended Complaint failed to plausibly allege Lead Ads practices limitation [1f]. We agree.

### A

In granting Meta's motion to dismiss, the district court stated that it "finds contact information sufficiently distinct from delivery method preferences to find that [Adnexus'] allegations [are] insufficient to state a plausible claim for direct infringement. This finding does not require claim construction." J.A. 9. We disagree.

Limitation [1f] recites, in pertinent part:

> retrieving a user profile associated with the recipient from a visitor information database using at least a portion of the identifier, wherein the user profile comprises *at least delivery method preferences* and demographic information.

’101 pat. at 9:31-35 (emphasis added).

As presented here, the only way Meta could win dismissal based on lack of plausibility would be to obtain a claim construction rendering Adnexus’ “delivery method preferences” allegations implausible. That is, Meta needs a claim construction that determines “contact information” and “delivery method preferences,” as those terms are used in claim 1 of the ’101 patent, to be so distinct that the former cannot indicate anything meaningful about the latter. The situation here is like the one we confronted in *Nalco*, where we reversed a district court’s dismissal based on its conclusion that a patentee’s “infringement claims simply are not plausible” because the defendant’s “objections to [the] theory of infringement read like classic *Markman* arguments.” 883 F.3d at 1347-49.

The same is true here. Adnexus suggests the two terms are “synonymous,” while Meta insists they must have different definitions under a “plain and ordinary meaning” reading of both terms. *Compare* Oral Arg. at 10:45-55, *with id.* at 20:20-32.[4] It appears to us that if a person of ordinary

[4] District courts have discretion to require parties opposing motions to dismiss on the grounds that claim construction is necessary to provide their formal proposed construction and to articulate how its adoption materially impacts resolution of the motion. *See Sanderling Mgmt. Ltd. v. Snap Inc.*, 65 F.4th 698, 704 & n.3 (Fed. Cir. 2023)

skill in the art would understand the claim terms "contact information" and "delivery method preferences," in the context of the '101 patent, to have any degree of overlap, Adnexus' allegations about Lead Ads and limitation [1f] remain plausible. Or if, alternatively, "contact information" is a subset of "delivery method preferences," then, again, plausibility is retained. That Meta and the district court had a narrower view of the scope of the claims confirms that Meta's argument for dismissal is a claim construction argument.

Adnexus understood this and told the district court as much. Its first point in opposition to Meta's motion to dismiss was as follows:

> First, [Meta's] argument is premature as it relies on a particular construction of 'delivery method preferences.' As claim construction has not occurred yet in this case, [Meta's] argument is ill-timed until Adnexus has had the opportunity to view [Meta's] documents related to firmware and other technical information of Meta Lead Ads.

J.A. 403. The district court acknowledged Adnexus' point. J.A. 8 ("[Adnexus] first responds that [Meta's] argument is premature and should occur after claim construction."). By then implicitly construing "contact information" as "sufficiently distinct from delivery method preferences" as to render Adnexus' allegations implausible, the court erred.

---

("In aid of determining whether a particular motion requires claim construction before disposition of the motion, a district court is free to require the party asking for construction to provide an actual proposed construction, to demonstrate that its construction is not frivolous, and to articulate how adoption of the construction would materially impact the analysis.").

To be sure, "district courts have wide latitude in how they conduct the proceedings before them, including claim-construction proceedings." *UTTO Inc. v. Metrotech Corp.*, 119 F.4th 984, 993-94 (Fed. Cir. 2024) (internal quotation marks omitted). In evaluating a motion to dismiss, district courts may, if they wish, engage in claim construction, provided they give the parties appropriate notice and an opportunity to be heard. *See id.* at 994. Alternatively, courts may adopt the construction advanced by the non-moving party and assess the motion by applying that construction. *See Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018) ("If there are claim construction disputes at the Rule 12(b)(6) stage, we have held that either the court must proceed by adopting the non-moving party's constructions, or the court must resolve the disputes to whatever extent is needed to conduct the [required motion to dismiss] analysis, which may well be less than a full, formal claim construction.") (internal citation omitted); *see also Teva Branded Pharm. Prods. R&D, Inc. v. Amneal Pharms. of New York, LLC*, 124 F.4th 898, 921 (Fed. Cir. 2024) ("[I]n resolving an issue as a matter of law at the pleadings stage, we can proceed by adopting the non-moving party's construction.") (internal quotation marks and brackets omitted). Under the circumstances presented here, however, the district court's discretion did not include the option of implicitly construing the disputed claim term *against* Adnexus, the non-moving party, without first giving Adnexus the opportunity it requested to be heard on the issue of the proper construction of this term.

"[S]ometimes a claim's meaning may be so clear on the only point that is ultimately material to deciding the dismissal motion that no additional process is needed." *UTTO*, 119 F.4th at 994. This is not such a case. Both parties point to various portions of the specification that arguably support their preferred interpretations. *Compare, e.g.*, '101 pat. at 1:38-40, 5:3-12 & Fig. 3 (Adnexus), *with id.* at 4:11-65, 5:37-41 & Fig. 2 (Meta). We will leave it to the district court on remand to resolve the parties'

claim construction disputes, either in connection with further proceedings on the motion to dismiss or at a later stage of the proceedings. *See UTTO*, 119 F.4th at 995 ("We have previously exercised our discretion not to resolve a claim-construction dispute ourselves, but instead to remand for further proceedings on the dispute."); *see also Frans Nooren Afdichtingssystemen B.V. v. Stopaq Amcorr Inc.*, 744 F.3d 715, 722 (Fed. Cir. 2014) ("Regarding claim construction . . . [the parties'] reasoning leaves us with a host of questions, which we think would be better addressed initially by more focused analysis – and, if necessary, more focused record development – on remand.").

B

Turning to the Amended Complaint, Adnexus adequately pled limitation [1f]. The Amended Complaint alleges that Lead Ads "directly infringe[s], literally and/or under the doctrine of equivalents, one or more claims, including without limitation at least claim 1 of the '101 [p]atent." J.A. 76. Although not necessary in order to plead a claim that can survive a motion to dismiss, Adnexus' Amended Complaint "expressly maps each claim limitation to the accused [product] by attaching claim charts." *AlexSam*, 119 F.4th at 42. In particular, the Amended Complaint expressly notes that "[t]he claim charts attached hereto as Exhibit B describe[] how the elements of an exemplary claim 1 from the '101 [p]atent are infringed by the Accused Products." J.A. 78 (emphasis omitted). With respect to limitation [1f], Exhibit B specifically alleges:

> Meta Lead Ads can use cookies to store and receive identifiers and verify user account logins. . . . When a target user clicks on an ad, Meta Lead Ads can check for user identification information in the cookies on the device and if present, automatically pull information from the person's profile to complete prefilled fields on the form. These prefilled

> fields can include contact information, *delivery method preferences*, and demographic information.

J.A. 101 (emphasis added).

At the motion to dismiss stage, these allegations, which are expressly incorporated in the Amended Complaint, "must be taken as true." *AlexSam*, 119 F.4th at 44. This includes the specific allegations, contained in Exhibit B, that Lead Ads "can check" the "cookies" associated with a user and "pull information" from that user's profile "includ[ing] . . . delivery method preferences." J.A. 101. As alleged, the Amended Complaint states a plausible claim that when Lead Ads retrieves a user profile, it obtains the user's delivery method preferences, satisfying limitation [1f].

The Amended Complaint additionally alleges that, prior to filing the lawsuit, Adnexus shared with Meta a "preliminary infringement analysis," which is attached to the Amended Complaint as Exhibit D.[5] J.A. 77, 110-26. This analysis contends that "a person's Facebook profile" or "Facebook account" constitutes a "user profile," which "*includes [the] user's email address (delivery preference)* and their age and interest preferences (demographic information)." J.A. 119-20 (emphasis added). These well-

---

[5] We reject Meta's contention that "Adnexus forfeited any arguments based on Exhibit D." Meta Br. at 24. Exhibit D is, as described in the Amended Complaint, a "preliminary infringement analysis." J.A. 77. It is attached to the Amended Complaint, J.A. 110-26, was never disclaimed by Adnexus as embodying its allegations, and is expressly invoked before us as support for those allegations, Open Br. at 20-25; Reply Br. at 9-13. Our de novo review of the sufficiency of Adnexus' allegations may include "any documents attached to the complaint." *Lone Star Fund*, 594 F.3d at 387; *see also Collins*, 224 F.3d at 498.

pleaded factual allegations must be taken as true, *see Nalco*, 883 F.3d at 1347, and they state a plausible basis to believe that Lead Ads performs limitation [1f].

Thus, because the Amended Complaint's "allegations are sufficiently specific and factual to constitute well-pled allegations," they "must be credited." *AlexSam*, 119 F.4th at 44. Adnexus has "articulate[d] why it is plausible that the accused product infringes the patent claim" at issue here. *Bot M8*, 4 F.4th at 1353. To wit: Meta stores a user's delivery preferences through cookies that can be retrieved by Lead Ads and used to automatically populate prefilled forms from advertisers, thereby allowing the advertiser to deliver its ads to the user's stored preferred contact method. *See, e.g.*, J.A. 119-20. Viewing these allegations in the light most favorable to Adnexus, as we must, they are sufficient to plausibly allege infringement of claim element [1f]. Thus, we vacate the district court's dismissal and remand for further proceedings.[6]

## IV

Accordingly, we vacate the district court's dismissal of Adnexus' Amended Complaint and remand for further proceedings consistent with this opinion.

## **VACATED AND REMANDED**

## COSTS

Costs awarded to Adnexus.

---

[6] Because we are vacating the district court's conclusion that Adnexus failed to adequately allege literal infringement of limitation [1f], we need not reach the district court's additional conclusion that Adnexus is estopped from alleging this limitation is also satisfied under the doctrine of equivalents. J.A. 9.